1   DANIEL J. BERGESON, Bar No. 105439, dbergeson@be-law.com
    CAROLINE McINTYRE, Bar No. 159005, cmcintyre@be-law.com
2   STEPHEN D. ROCKWELL, Bar No. 196976, srockwell@be-law.com
    BERGESON, LLP
3   303 Almaden Boulevard, Suite 500
    San Jose, CA 95110-2712
4   Telephone:  (408) 291-6200
    Facsimile:  (408) 297-6000
5

6   Attorneys for Defendant
    JOHN F. LONGINOTTI
7

8                 UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11

12  FRANK SCOGNAMILLO, et al.,          Case No. C 03-02061 TEH

13                      Plaintiffs,     **JOHN F. LONGINOTTI'S NOTICE OF
                                        MOTION AND MOTION TO DISMISS
14       vs.                            AND MEMORANDUM OF POINTS
                                        AND AUTHORITIES IN SUPPORT OF
15                                      MOTION TO DISMISS PLAINTIFFS'
                                        THIRD AMENDED COMPLAINT**
16  CREDIT SUISSE FIRST BOSTON
    CORPORATION, a Delaware corporation, et al.,   Date:  June 13, 2005
17                                      Time:  10:00 a.m.
                        Defendants.     Place: Courtroom 12, 19th Floor
18                                      Judge: Hon. Thelton E. Henderson

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................ 2

II. THE TAC'S ALLEGATIONS ....................................................................... 4

III. PROCEDURAL BACKGROUND ................................................................. 5

IV. ARGUMENT ............................................................................................ 6

A.  Plaintiffs' Fraud-Based Claims Do Not Satisfy The Heightened Pleading
    Standard Of Rule 9(b). .................................................................... 6

    1.  Rule 9(b) Requires Fraud To Be Pleaded With Particularity. ............. 7

    2.  Plaintiffs Fail To Allege Justifiable Reliance As To Longinotti. ......... 7

    3.  Plaintiffs Fail To Plead The Alleged Misrepresentations With The
        Requisite Particularity. ........................................................... 8

        a.  Plaintiffs Fail To Identify Concrete, Particularized
            Misrepresentations. ......................................................... 8

            (i)  Statements Re: IPO And Prospectus ................................. 9

            (ii) Statements Re: Business Prospects Of Netcentives .......... 10

        b.  Plaintiffs Have Failed To Identify Who Made The Alleged
            Misrepresentations. ....................................................... 10

        c.  Plaintiffs' Conclusory Allegation As To Longinotti's
            Knowledge Is Insufficient. ............................................... 11

    4.  Plaintiffs Allege Only Non-Actionable Statements Of Opinion. .......... 11

    5.  The Claims For Fraud Or Negligent Misrepresentation Based On
        Omission Of Material Information Fail. ..................................... 13

B.  Plaintiffs' Claims For Breach Of Fiduciary Duty, Aiding And Abetting
    Breach Of Fiduciary Duty, And Negligence Must Be Dismissed Because
    Plaintiffs Fail To Allege Any Legally Cognizable Duty. ...................... 13

    1.  The TAC Does Not Adequately Allege Any Fiduciary Duty Owed By
        Longinotti To Plaintiffs. ...................................................... 14

    2.  The Amended Complaint Does Not Adequately Allege A Claim For
        Aiding And Abetting Breach Of Fiduciary Duty Against Longinotti. ..... 15

    3.  The TAC Does Not Adequately Allege A Claim For Negligence
        Against Longinotti .............................................................. 15

C.  Plaintiffs' Corporations Code Claims Fail. ........................................ 16

D.   Section 17200 Does Not Apply To Securities Transactions, Therefore,
      Plaintiffs' Unfair Business Practices Claim Must Be Dismissed..........................17

E.   Plaintiffs' Conspiracy and "Acting in Concert" Claims Against Longinotti
      Fail For Lack Of Underlying Wrongful Conduct...................................................19

V.   CONCLUSION.................................................................................................................20

JOHN F. LONGINOTTI'S MOTION TO DISMISS
AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS                    Case No. C 03-02061 TEH

# TABLE OF AUTHORITIES

**Page**

**State Cases**

*Bank of the West v. Superior Court,*
    2 Cal. 4th 1254 (1992) .......................................................................... 20

*Barbara A. v. John G.,*
    145 Cal. App. 3d 369 (1983) ................................................................ 16

*Bowen v. Ziasun Technologies, Inc.,*
    116 Cal. App. 4th 777 (2004) ............................................................... 19

*California Amplifier, Inc. v. RLI Ins. Co.,*
    94 Cal. App. 4th 102 (2001) ................................................................. 18

*Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.,*
    20 Cal.4th 163 (1999) ........................................................................... 20

*City of Atascadero v. Merril Lynch, Pierce, Fenner & Smith, Inc.,*
    68 Cal. App. 4th 445 (1998) ................................................................. 16

*Committee on Children's Television, Inc. v. General Foods Corp.,*
    35 Cal.3d 197 (Cal. 1983) ...................................................................... 8

*Continental Airlines, Inc. v. McDonnell Douglas Corp.,*
    216 Cal. App. 3d 388 (1989) .................................................................. 7

*Cortez v. Purolator Air Filtration Prods. Co.,*
    23 Cal.4th 163 (2000) ........................................................................... 20

*Emery v. Visa Int'l Serv. Ass'n,*
    95 Cal. App. 4th 952 (2002) ................................................................. 19

*Frost v. Hanscome,*
    198 Cal. 550 (1926) .............................................................................. 20

*Gonsalves v. Hodgson,*
    38 Cal.2d 91 (1951) ................................................................................ 7

*Goodman v. Kennedy,*
  18 Cal. 3d 335 (1976)...................................................................................... 14

*Kamen v. Lindly,*
  94 Cal. App. 4th 197 (2001)............................................................................. 18

*Khoury v. Maly's of California, Inc.,*
  14 Cal. App. 4th 612 (1993)............................................................................. 19

*Korea Supply Co. v. Lockheed Martin Corp.,*
  29 Cal.4th 1134 (2003)..................................................................................... 20

*Lazar v. Superior Court,*
  12 Cal. 4th 631 (1996)...................................................................................... 13

*Mehrtash v. Mehrtash,*
  93 Cal. App. 4th 75 (2001)............................................................................... 20

*Richard P. v. Vista Del Mar Child Care Service,*
  106 Cal. App. 3d 860 (1980)............................................................................ 13

*Schuster v. Gardner,*
  127 Cal. App. 4th 305 (2005) .......................................................................... 14

*Stansfield v. Starkey,*
  220 Cal. App. 3d 59 (1990).............................................................................. 14

*Yanase v. Auto. Club of S. Cal.,*
  212 Cal. App. 3d 468 (1989)............................................................................ 14

*Zeh v. Alameda Community Hotel Corporation,*
  122 Cal. App. 366 (1932)................................................................................. 13

**Federal Cases**

*Aaron v. Moderna,*
  No. C97-0233 FMS, 1997 WL 564064 (N.D. Cal. Aug. 27, 1997) ................. 16

*Allen v. City of Beverly Hills,*
  911 F.2d 367 (9th Cir. 1990)............................................................................ 21

*Conley v. Gibson,*
   355 U.S. 41, 78 S.Ct. 99 (1957) ........................................................................... 6

*Haddock v. Board of Dental Examiners of California,*
   777 F.2d 462 (9th Cir. 1985) ................................................................................. 6

*Holden v. Hagopian,*
   978 F.2d 1115 (9th Cir. 1992) ............................................................................. 12

*Hudson v. Sherwood Secs. Corp.,*
   No. C-80-20344-WAI, 1989 WL 534960 (N.D. Cal. May 9, 1989) ................... 15

*In re GlenFed Sec. Litig.,*
   42 F.3d 1541 (9th Cir. 1994) ................................................................................. 7

*In re Syntex Corp. Sec. Litig.,*
   855 F. Supp. 1086 (N.D. Cal. 1994) .................................................................... 14

*In re U.S. Grant Hotel Associates, Ltd. Sec. Litig.,*
   740 F. Supp. 1460 (S.D. Cal. 1990) .................................................................... 16

*Lubin v. Sybedon Corp.,*
   688 F. Supp. 1425 (9th Cir. 1988) .................................................................*passim*

*Richardson v. Reliance Nat. Indemnity Co.,*
   No. C-99-2952 CRB, 2000 WL 284 211 (N.D. Cal. Mar. 9, 2000) ................... 17

*Shearson Lehman Bros, Inc. v. Greenberg,*
   Nos. CV-93-0609-R, 93-0623-R, 1993 WL 144856 (C.D. Cal.
   March 15, 1993) ................................................................................................... 19

*Shearson Lehman Brothers, Inc. v. Greenberg,*
   60 F.3d 834 (9th Cir. 1995) ................................................................................. 19

*Spinner Corp. v. Princeville Development Corp.,*
   849 F.2d 388 (9th Cir. 1988) ............................................................................... 19

*U.S. Concord, Inc. v. Harris Graphics Corp.,*
   757 F. Supp. 1053 (N.D. Cal. 1991) ..................................................................... 7

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003) ............................................................................... 7

- v -

1  *Yourish v. Cal. Amplifier,*
2      191 F.3d 983 (9th Cir. 1999) ............................................................................... 7, 9, 11

3  **State Statutes**

4  Business and Professions Code § 17200 ................................................................. 1, 4, 19

5  Civil Code § 1709 ............................................................................................................... 6

6  Civil Code § 1710 ......................................................................................................... 6, 14

7  Cal. Civ. Code § 1710(1) ................................................................................................... 13

8  Corp. Code § 25400 ........................................................................................................... 18

9  Corp. Code § 25400 (d) ..................................................................................................... 18

10  Corp. Code § 25403 ............................................................................................................. 4

11  Corp. Code, § 25500 ..................................................................................................... 4, 18

12

13  **Federal Rules**

14  FRCP 9(b) .............................................................................................................. 1, 11, 13

15  FRCP 12(b)(6) ................................................................................................................. 1, 6

16

17  **Other**

18  Restatement (Second) Torts § 538A ................................................................................. 19

19  Securities and Exchange Act of 1934, Section 10(b) ......................................................... 6

20

21

22

23

24

25

26

27

28

JOHN F. LONGINOTTI'S MOTION TO DISMISS
AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS                Case No. C 03-02061 TEH

1   Defendant John F. Longinotti ("Longinotti") hereby provides notice that he will move to

2   dismiss the Third Amended Complaint ("TAC") filed by Plaintiffs in the above-captioned action on

3   June 13, 2005 at 10:00 a.m., Courtroom 12, 19th Floor, 450 Golden Gate Avenue, San Francisco,

4   California, 94102.

5   This Motion to Dismiss is brought pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules

6   of Civil Procedure for failure to state a claim upon which relief may be granted and for failure to

7   meet the pleading requirements of Rule 9(b).  Longinotti also joins in, and incorporates by

8   reference, the Motions to Dismiss filed by the other defendants in this action, specifically that filed

9   by West Shell, III, to the extent the arguments therein are also applicable to Longinotti.

10   On March 21, 2005, this Court ruled on defendants Credit Suisse First Boston, LLC

11   ("CSFB"), George Boutros, and Storm Duncan's ("the CSFB Defendants" or "Defendants") motion

12   to dismiss the Third Amended Complaint, granting that motion in part, and denying it in part (the

13   "Order").  Defendant John F. Longinotti's instant motion to dismiss will not, pursuant to this

14   Court's Order, repeat arguments that were rejected in the Order.  In addition, to further streamline

15   the briefing, Longinotti has joined in certain legal arguments made by Defendant

16   West Shell, III, resulting in a shorter combined briefing.

17   This Motion is based on the following Memorandum of Points and Authorities, all pleadings

18   and papers filed herein, oral argument by counsel, and upon such additional evidence and argument,

19   both written and oral, which may be presented to the Court.

20   **STATEMENT OF ISSUES TO BE DECIDED**

21   1.      Whether Plaintiffs have failed to state their claims for breach of fiduciary duty,

22   aiding and abetting such breach, and negligence, because Plaintiffs have failed to adequately allege

23   duty.

24   2.      Whether Plaintiffs have failed to state their fraud-based claims because Plaintiffs

25   have failed to plead those claims with the particularity required by Federal Rule of Civil

26   Procedure 9(b).

27   3.      Whether Plaintiffs' California Corporations Code claims fail to state claims for

28   failing to allege misrepresentations, direct participation in a sale, failing to allege a statute imposing

- 1 -

1    private liability, and because they are barred by the statute of limitations.

2       4.      Whether Plaintiffs have failed to state their claim for unfair competition under

3    Section 17200 because that section does not apply to securities transactions, Plaintiffs have failed to

4    allege particular facts, and the section does not authorize damages.

5       5.      Whether Plaintiffs' purported claims for conspiracy and "acting in concert" should be

6    dismissed for failure to plead agreement to participate in an unlawful act.

7                        **MEMORANDUM OF POINTS AND AUTHORITIES**

8    **I.    INTRODUCTION**

9       The Third Amended Complaint's (the "TAC") allegations against Longinotti are strikingly

10   different from the allegations against the CSFB Defendants. The TAC is filled with broad and

11   conclusory allegations regarding the CSFB Defendants' alleged general practices regarding initial

12   public offering ("IPO") allocation and valuation of shares, some of which allegations generally

13   pertain to Netcentives, Inc. ("Netcentives"). The entire thrust of Plaintiffs' allegations is that CSFB,

14   and certain defendants who were CSFB employees, engaged in a scheme that resulted in the

15   artificial inflation of Netcentives shares, to the detriment of Plaintiffs, whose majority ownership of

16   UVN Holdings, Inc. ("UVN") was exchanged for Netcentives shares as part of a merger of the

17   companies. The TAC is conspicuously lacking in factual allegations as to any actionable role in this

18   purported scheme played by Longinotti, who was a Netcentives officer and *not* an investment

19   banker/underwriter. As set forth below, the TAC should be dismissed with prejudice, in its entirety,

20   as against Longinotti because Plaintiffs have not alleged any cognizable duty owed by Longinotti to

21   Plaintiffs, and because the TAC wholly fails to meet the heightened pleading requirements to state

22   any fraud claims against Longinotti.

23      At most, the TAC alleges that Longinotti engaged in merger negotiations on behalf of

24   Netcentives with Plaintiffs and UVN, that the exchange ratio at which the deal was later

25   consummated was unfair because Netcentives stock was allegedly overvalued, and, in the vaguest

26   and most conclusory fashion, that Longinotti conspired with the underwriter defendants to

27   artificially inflate Netcentives's stock. The entire thrust of the TAC, however, is that it was the

28   underwriters who engaged in improper practices to inflate technology IPO share prices, extract

                                            - 2 -

1    exorbitant commissions, and enrich themselves.  The following allegation from Plaintiffs' TAC is

2    illustrative:

3            The systematic and unlawful practices involving Netcentives and other IPOs
             described in this Complaint were not isolated occurrences.  Rather, these practices
4            were fundamental to the business that CSFB conducted with a significant portion of
             its customer base.  The prevalence and habitual nature of these practices is reflected
5            in numerous reported e-mail messages and other communications among CFSB
             management personnel described above.

6

7    (TAC ¶ 225)  (*See also id.* ¶ 11).

8            In short, Plaintiffs themselves imply that Longinotti was irrelevant to the alleged CSFB

9    scheme – these were habitual practices *among CSFB management personnel.*  For example,

10   Longinotti is not alleged to have had any role in "tie-ins" requiring CSFB customers to buy less-

11   favored stocks that CSFB recommended in order for these CSFB customers to participate in IPOs.

12   (*See* TAC ¶¶ 12, 226.)  Plaintiffs further allege that CSFB's "laddering" practice was one by which

13   "investment banks manipulated the trading of IPOs <u>by lining up commitments from investors to buy</u>

14   <u>more shares at specific prices above the offering prices.</u>"  (TAC ¶ 10 (emphasis in original).)

15           Indeed, it was the underwriter defendants who allegedly benefited from the manipulative

16   practices regarding the Netcentives IPO, not Longinotti.[1]  Plaintiffs do not, and cannot, allege that

17   Longinotti benefited from CSFB's alleged artificial inflation practices.   Plaintiffs allege that, in line

18   with the massive IPO Allocation Litigation, the Netcentives IPO was just another technology IPO

19   that the investment banks could use to make money for themselves and their management.  (*See*

20   TAC ¶¶ 176-78, 221, 223.)

21           Longinotti did not owe a fiduciary or other special duty to UVN or Plaintiffs.  Plaintiffs were

22   sitting across the table from Longinotti during arms-length merger negotiations and, at most, were

23   merely negotiating for the sale of their company in exchange for Netcentives shares.  Accordingly,

24   Plaintiffs' claims for breach of fiduciary duty, negligence, and aiding and abetting breach of

25   fiduciary duty must be dismissed.

26   _____

27   [1]  Indeed, Longinotti, similar to Plaintiffs (*see* TAC ¶ 149), was "locked-up" and unable to sell his
     Netcentives shares and, therefore, suffered substantial losses on his holdings of Netcentives stock.

28   He is now forced to defend against a TAC that itself alleges the investment bankers used the
     Netcentives IPO to *their* profit.

JOHN F. LONGINOTTI'S MOTION TO DISMISS
AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS                    Case No. C 03-02061 TEH

1    Plaintiffs fail to plead their fraud claims with any of the requisite particularity against

2    Longinotti, because, as stated above, their claims are not really against Longinotti. Plaintiffs' unfair

3    competition claim also fails for lack of facts, but, more fundamentally, because section 17200 does

4    not apply *at all* to securities transactions. Moreover, Plaintiffs improperly seek damages under this

5    claim – section 17200's remedies are limited to restitution and injunctive relief, and Plaintiffs

6    cannot seek restitution from Longinotti, who received nothing from Plaintiffs. In addition,

7    Plaintiffs' California Corporations Code claims fail because they are time-barred under section

8    25506 and because: (1) Longinotti did not directly participate in the sale of securities, within the

9    meaning of section 25500, and (2) section 25403 declares certain conduct illegal, it does not create

10   civil liability. Finally, Counts XVII and XVIII, for "acting in concert" and civil conspiracy, should

11   be dismissed because Plaintiffs have failed to allege Longinotti's agreement to, or participation in,

12   wrongful acts. Accordingly, Longinotti respectfully requests that this Court grant his motion to

13   dismiss without leave to amend.

14   **II.     THE TAC'S ALLEGATIONS**

15   Netcentives was a provider of marketing services through Internet technologies that were

16   designed to assist merchants, financial institutions, or other market participants in acquiring,

17   motivating and retaining customers through Internet loyalty programs. (*See* TAC ¶ 65.) In October

18   1999, Netcentives completed its initial public offering with the assistance of several major

19   investment banking firms, including CSFB, Hambrecht & Quist, the predecessor in interest to

20   J.P. Morgan Chase & Co. ("J.P. Morgan"), and Thomas Weisel Partners LLC ("Weisel") (CSFB,

21   J.P. Morgan, and Weisel sometimes are collectively referred to as the "Netcentives Underwriters")

22   (*See* TAC ¶¶ 76-78, 237.)

23   UVN was a company that developed new credit card based consumer loyalty programs. (*See*

24   TAC ¶ 74.) Plaintiffs Frank K. Scognamillo ("Scognamillo"), David E. Shein ("Shein"), Stephen B.

25   Galasso ("Galasso"), and John J. Cresto ("Cresto") (Scognamillo, Shein, Galasso, and Cresto,

26   sometimes collectively are referred to as "Plaintiffs"), all former executives with, and shareholders

27   of, UVN (*see* TAC, ¶¶ 26-32, 57, 59), owned about 93% of the common stock of UVN. (*See id.* ¶

28   32.)

-4-

1    During the fall of 1999, Galasso contacted Netcentives regarding a possible acquisition of

2    UVN (the "Merger"). (*See* TAC ¶ 74.) Over the course of several months, CSFB, through Storm

3    Duncan ("Duncan") and George Boutros ("Boutros") (CSFB, Frank P. Quattrone, Duncan, and

4    Boutros sometimes are collectively referred to as the "underwriter defendants"), Netcentives,

5    through West Shell, III ("Shell") and Longinotti (Duncan, Boutros, Shell, and Longinotti sometimes

6    collectively are referred to as the "Individual Defendants"), on the one hand, and UVN, on the other

7    hand, engaged in arms-length negotiations that culminated in the closing of the Merger on March 3,

8    2000. (*See* TAC ¶ 73-113.) Pursuant to the Merger, Plaintiffs exchanged their shares of UVN stock

9    for Netcentives unregistered common stock. (*See* TAC ¶ 113.)

10    During the negotiations, and after the Merger, and the closely following bursting of the

11    Internet and technology bubble, the price of Netcentives common stock declined precipitously. (*See*

12    *id.* ¶¶ 66, 70, 149.) Netcentives, unable to recover, ultimately filed for bankruptcy in October 2001,

13    with its assets substantially liquidated in December 2001 as part of the bankruptcy proceedings.

14    (*See id.* ¶ 150.)

15    In June 2001, a class action lawsuit was filed in the United States District Court for the

16    Southern District of New York against Netcentives, CSFB, and other underwriters and individuals

17    that alleged material misrepresentations and omissions in the Registration Statement and Prospectus

18    with respect to undisclosed arrangements that the Netcentives Underwriting Defendants had made to

19    artificially inflate the market price of the common stock of Netcentives (the "IPO Litigation")

20    (Original Complaint ¶ 58.). Hundreds of class action lawsuits alleging similar claims were filed

21    against numerous other underwriters, issuers, and individuals during this same time period.

22    Plaintiffs' TAC incorporates the major themes of the IPO litigation. (*See, e.g.* TAC ¶¶ 2-3, 94-95,

23    124.)

24    **III.    PROCEDURAL BACKGROUND**

25    Plaintiffs originally filed this action in Arizona state court on March 1, 2002. Defendants

26    removed the action to Arizona federal district court on April 8, 2002. Defendants then moved to

27    dismiss Plaintiffs' original complaint. Instead of responding to these motions to dismiss, Plaintiffs

28    elected to amend their complaint, filing their First Amended Complaint on August 2, 2002.

- 5 -

1   Defendants then moved again to dismiss the amended complaint, or in the alternative to transfer

2   venue to the Northern District of California.  On April 8, 2003, this action was transferred to this

3   Court.  Plaintiffs' Second Amended Complaint was filed on January 12, 2004.[2]  Plaintiffs amended

4   their complaint again, resulting in the operative Third Amended Complaint.

5   **IV.    ARGUMENT**

6          The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the claim

7   or claims stated in the complaint.  *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

8   The test is whether the facts, as alleged, support a valid claim entitling the plaintiff to relief.  *See*

9   *Haddock v. Board of Dental Examiners of California*, 777 F.2d 462, 464 (9th Cir. 1985).

10         **A.      Plaintiffs' Fraud-Based Claims Do Not Satisfy The Heightened Pleading**
           **Standard Of Rule 9(b).**

11

12         Plaintiffs bring several fraud-based claims against Longinotti, couched in different language:

13   Count X is entitled "fraud"; Count VIII is entitled "negligent misrepresentation"; and Count XVI

14   alleges violations of Sections 1709 and 1710 of the California Civil Code.  Under federal law, all

15   claims sounding in fraud are subject to the heightened pleading standards of Federal Rule of Civil

16   Procedure 9(b), as discussed below.  All of these claims sound in fraud, as they all rest (to the extent

17   that the claims rest on any basis at all) on Plaintiffs' allegations that the underwriters artificially

18   inflated Netcentives's shares.  Plaintiffs' claim under Sections 1709 and 1710 is simply a

19   duplicative assertion that Longinotti engaged in fraud and negligent misrepresentation.

20         The elements of a cause of action for fraud are:  (1) misrepresentation of fact; (2) knowledge

21   of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage.  *See Lazar*

22   *v. Superior Court*, 12 Cal. 4th 631, 638 (1996).  The elements of a cause of action for negligent

23   misrepresentation are:  (1) that the defendants made a representation as to a past or existing material

24   fact; (2) the representation was untrue; (3) defendant, regardless of his actual belief, made the

25   representation without any reasonable ground for believing it to be true; (4) the representation was

26   _____

27   [2]  The First Amended Complaint included claims under Section 10(b) of the Securities Exchange
     Act of 1934 and Rule 10b-5 thereunder against Longinotti. After the Court in the IPO litigation
     dismissed the 10(b) claims against Longinotti, Plaintiffs in this Action eliminated the 10(b) claims

28   against Longinotti from their Second and Third Amended Complaints.

JOHN F. LONGINOTTI'S MOTION TO DISMISS
AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS                    Case No. C 03-02061 TEH

1  made with the intent to induce plaintiff to rely on it; (5) plaintiff was unaware of the falsity of the

2  representation, acted in reliance on the truth of it, and was justified in that reliance; and (6) as a

3  result of his reliance, the plaintiff sustained damage. *See Continental Airlines, Inc. v. McDonnell*

4  *Douglas Corp.*, 216 Cal. App. 3d 388, 389 (1989).

5          **1.    Rule 9(b) Requires Fraud To Be Pleaded With Particularity.**

6          Rule 9(b)'s heightened pleading standard applies to all cases where the gravamen of the

7  claim is fraud, including Plaintiffs' claims for securities fraud, negligent misrepresentation, and

8  breach of fiduciary duty. *See* Order at 9; *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th

9  Cir. 2003) (if a plaintiff chooses to allege "a unified course of fraudulent conduct" then "the

10  pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)"); *In re*

11  *GlenFed Sec. Litig.*, 42 F.3d 1541, 1545 n.3 (9th Cir. 1994) ("[Rule 9(b)] . . . makes no distinction

12  between common law fraud and modern statutory causes of action based on fraud."); *U.S. Concord,*

13  *Inc. v. Harris Graphics Corp.*, 757 F. Supp. 1053, 1055 (N.D. Cal. 1991) (applying Rule 9(b) to

14  negligent misrepresentation). Failure to satisfy Rule 9(b) requires dismissal of the complaint.

15          To satisfy Rule 9(b) particularity requirements, the complaint must allege specifically the

16  time, place, and content of each alleged fraud or misrepresentation. *See Yourish v. Cal. Amplifier*,

17  191 F.3d 983, 993 n. 10 (9th Cir. 1999). In addition, "plaintiff must set forth an explanation as to

18  why the statement or omission complained of was false or misleading." *Id.* Plaintiffs must state

19  with particularity facts demonstrating that the statement was false when made. *Id.* Finally,

20  plaintiffs must plead with sufficient particularity attribution of the alleged misrepresentations as to

21  each defendant – lumping defendants together as a group is not permissible. *Lubin v. Sybedon,* 688

22  F. Supp. 1425 (9th Cir. 1988).

23          **2.    Plaintiffs Fail To Allege Justifiable Reliance As To Longinotti.**

24          As this Court noted in its Order (Order at 7-8), the absence of factual allegations supporting

25  the element of justifiable reliance precludes recovery on a fraud claim. *See Gonsalves v. Hodgson*,

26  38 Cal.2d 91, 100-01 (1951). Plaintiffs allege they are highly experienced businessmen. *See* Order

27  at 7-8. Plaintiff Scognamillo alleges he had more than 20 years of expertise in UVN's business,

28  and, in "view of his stature in the market," he was invited to address various industry seminars.

1   (TAC ¶ 58.)  The merger agreement explicitly states that the parties "agree that they have been

2   represented by counsel during the negotiation, preparation, and execution of the Agreement." *See*

3   Order at 8.  Indeed, Plaintiff Cresto was laterally hired as a partner by Seyfarth Shaw in the

4   "financial services, mergers, and acquisitions" department. *See id.* at 7.

5           This Court stated in its Order that given these alleged facts any reliance by Plaintiffs would

6   appear to be unreasonable but for the allegations that the CSFB Defendants owed fiduciary duties to

7   Plaintiffs. (*See id.*)  However, as set forth herein, Longinotti had no such special relationship with

8   Plaintiffs, and, in fact, sat on the opposite side of the table from these experienced businessmen,

9   who were represented by counsel.[3]  Therefore, Plaintiffs have failed to allege justifiable reliance on

10  any statement by Longinotti and their fraud claims must be dismissed.

### 3.   Plaintiffs Fail To Plead The Alleged Misrepresentations With The Requisite Particularity.

13          Plaintiffs allege that the Individual Defendants made the following misrepresentations about

14  the future value of Netcentives stock:  (1) misrepresentations regarding the market price of

15  Netcentives's common stock (*see* TAC ¶¶ 72-132); (2) misrepresentations about Netcentives's

16  transactions with other companies (*see id.* ¶¶ 125-30); and (3) repeating materially misleading

17  statements contained in the Prospectus during the Merger negotiations. (*See id.* ¶ 76.)  In addition,

18  Plaintiffs allege that defendants made misrepresentations about Plaintiffs' future roles with

19  Netcentives. (*See id.* ¶¶ 82.)  Plaintiffs' conclusory assertions do not meet the heightened

20  requirements of Rule 9(b), and, in fact, with regard to Longinotti's knowledge, the assertions are not

21  only utterly conclusory but are contradicted by the TAC's own allegations.

### a.   Plaintiffs Fail To Identify Concrete, Particularized Misrepresentations.

24          Plaintiffs fail to plead with particularity the time, place and content of each alleged

25  misrepresentation. *Yourish*, 191 F.3d at 993.  In particular, Plaintiffs do not specify when, where, or

26

27  [3] With regard to Plaintiffs' claim that they were promised certain roles at Netcentives, Plaintiffs
    could not justifiably rely on such statements, in part because the actual employment contracts these

28  experienced businessmen entered into of their own free will "were silent as to Plaintiffs' roles and
    duties post merger." (TAC ¶ 132.)

- 8 -

1  by whom the alleged misrepresentations about the market price for Netcentives's common stock,

2  about completed transactions with Netcentives, or about Plaintiffs' future roles with Netcentives,

3  were made.

(i)    **Statements Re: IPO And Prospectus**

5       Plaintiffs' allegation that they were misled as to the market price for Netcentives's shares is

6  utterly without support.  In fact, Plaintiffs allege that they knew the market price and that they based

7  the exchange ratio in the Merger on that price (the final deal was reached at a number, $52, below

8  the then current market price for Netcentives shares).  (*See* TAC ¶¶ 96-98, 109.)  Plaintiffs allege

9  that this was not the "real" market price for Netcentives shares, but nowhere do Plaintiffs state what

10  the "real" price was or how Plaintiffs could arrive at such a number.  The market price was exactly

11  what it was, and Plaintiffs cannot claim that Longinotti's repetition of it during negotiations was a

12  misrepresentation.  In other words, Plaintiffs cannot base a claim against Longinotti on their

13  dissatisfaction with the market's pricing of Netcentives's shares.  To the extent Plaintiffs claim the

14  underwriter defendants manipulated this market price, Plaintiffs have failed to factually allege any

15  misrepresentations (as opposed to assertion and general statements as to CSFB's practice regarding

16  other companies) supporting this argument, much less allege facts as to Longinotti's role in such an

17  underwriter scheme.

18       Plaintiffs' claims regarding the Prospectus are similarly deficient.  In that regard, Plaintiffs

19  assert that:  (1) the Prospectus contained material misstatements and omissions regarding "excessive

20  commissions," (2) the underwriter defendants "manipulated and artificially inflated" the Netcentives

21  aftermarket by entering into "tie-in" and "laddering" arrangements with unspecified customers; and

22  (3) the defendants repeated the alleged materially misleading statements contained in the Prospectus

23  during the Merger negotiations.  (*See* TAC ¶¶ 20, 76.)  Such conclusory allegations do not contain

24  the requisite particularized facts to support allegations of fraud.

25       For example, with respect to the alleged "excessive commissions," Plaintiffs do not identify

26  any customers the Netcentives's underwriters allegedly solicited to pay excessive commissions or

27  fees in exchange for their allocations in the Netcentives IPO.  Nor do Plaintiffs allege the amount of

28  the alleged commissions, how many shares were allocated to the customers, or when, where, and by

1   whom the alleged solicitations took place.[4]  Similarly, with respect to the so-called "tie-in"

2   arrangements, Plaintiffs fail to identify any specific customers who allegedly entered into these

3   arrangements related to the Netcentives IPO, or any of the facts regarding these arrangements.

4   Moreover, all of these alleged misrepresentations concern alleged conduct by the underwriters in

5   connection with IPOs, not conduct by Netcentives, much less by Longinotti.

6                    **(ii)    Statements Re: Business Prospects Of Netcentives**

7           Similarly, Plaintiffs allege that defendants other than Longinotti informed them during the

8   merger negotiations that Netcentives was involved in "another transaction," that this other

9   transaction would provide greater compensation to Plaintiffs, and that the other transaction was a

10  deal for CMGI, Inc. ("CMGI") to acquire Netcentives. (*See* TAC ¶¶ 115-132.)  Plaintiffs cannot

11  base any claim against Longinotti on these other defendants' alleged representations.  Longinotti

12  was an employee of Netcentives – he is not liable under any agency theory for statements by others,

13  including other Netcentives employees.  In addition, Plaintiffs allege that the underwriter defendants

14  "would make any representations that were necessary to serve their own interests to cause Plaintiffs

15  to close the Merger regardless of the merits." (*Id.* ¶ 107.)  Plaintiffs cannot seek to impose liability

16  on Longinotti for the representations of the underwriter defendants, or any other defendants.

17                    **b.    Plaintiffs Have Failed To Identify Who Made The Alleged**
                           **Misrepresentations.**

18

19          Under Rule 9(b), a plaintiff must attribute fraudulent acts or statements to a particular

20  defendant. *See Lubin*, 688 F. Supp. at 1443. ("[C]ourts must be especially attentive to a plaintiff's

21  'dragnet' tactic of indiscriminately grouping all of the individual defendants into one wrongdoing

22  monolith.").  Plaintiffs impermissibly attempt to impose liability on Longinotti for the alleged

23  misrepresentations and conduct of others.  For example, Plaintiffs attempt to impose liability on

24  Longinotti for representations regarding a possible acquisition of Netcentives by CMGI, despite the

25  lack of allegations in the TAC that Longinotti made any such representations to Plaintiffs. (*See*

26  _____

[4]  The TAC contains references to alleged excessive commissions relating to other IPOs. (*See* TAC

27  ¶¶ 151-262.) This does not remedy the pleading deficiency because these examples are unrelated to
    the Netcentives IPO, despite Plaintiffs' attempts to disguise this by sprinkling headings such as "The

28  Artificial Inflation of Netcentives Shares" throughout. (*See id.* at p. 36.)

JOHN F. LONGINOTTI'S MOTION TO DISMISS
AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS                    Case No. C 03-02061 TEH

1    TAC ¶¶ 129-30.)

2                        c.      **Plaintiffs' Conclusory Allegation As To Longinotti's Knowledge Is**
                                 **Insufficient.**

3

4           Plaintiffs' conclusory allegation that Longinotti knew of the underwriter defendants' alleged

5    IPO inflation practices is completely unsupported by any facts, and, in fact, is contrary to the facts

6    alleged by Plaintiffs.  As such, this Court need not accept it as true in this motion to dismiss.

7    "Conclusory allegations, unsupported by the facts alleged, need not be accepted as true." *Holden v.*

8    *Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992).  Specifically, Plaintiffs conclusorily allege that

9    Longinotti "knew, should have known, or [was] reckless in not knowing, of the manipulative

10   arrangements for distributing and trading the Netcentives shares that occurred during the IPO and

11   during the Merger and aftermarket trading."  (TAC ¶ 88.)  These were practices that Plaintiffs allege

12   were engaged in by CSFB and the other underwriter defendants, and on a routine and "habitual"

13   basis regarding technology IPOs during the boom times, as set forth above.  Therefore, not only is

14   Plaintiffs' allegation as to knowledge utterly conclusory, but it is, in fact, contrary to Plaintiffs'

15   other allegations, which are to the effect that the underwriters' manipulation practices were

16   habitually carried out in their offices, using their employees and their customers, to their benefit,

17   without regard to the company they were spinning.  Plaintiffs must allege facts supporting their

18   conclusory assertions, such as specific allegations regarding contemporaneous information

19   possessed by Longinotti that indicated the underwriters had engaged in such activities with regard to

20   the Netcentives IPO.  As these facts are entirely absent, this Court should find that Plaintiffs have

21   failed to allege information possessed by Longinotti as to the underwriters' alleged practices, and

22   dismiss the fraud and negligent misrepresentation claims on that basis as well.

23                 **4.     Plaintiffs Allege Only Non-Actionable Statements Of Opinion.**

24          In order to state a claim for fraud, the alleged representation must ordinarily be an

25   affirmation of fact.  Cal. Civ. Code § 1710(1).  A statement of opinion is ordinarily not actionable.

26   In that regard, a statement is one of opinion "if it expresses only (a) the belief of the maker, without

27   certainty, as to the existence of a fact; or (b) his judgment as to quality, value, authenticity, or other

28   matters of judgment."  Restatement (Second) Torts § 538A.  Moreover, the representation must

                                                    - 11 -

1    ordinarily be as to a past or existing material fact; predictions as to future events are deemed

2    opinions, and not actionable fraud. *See* Order at 13; *Richard P. v. Vista Del Mar Child Care*

3    *Service*, 106 Cal. App. 3d 860, 865 (1980); *Zeh v. Alameda Community Hotel Corporation*, 122 Cal.

4    App. 366 (1932) (statements regarding future value of stock constituted non-actionable predictions

5    of future events).

6        Plaintiffs' allegations regarding representations about the value of their restricted

7    Netcentives stock clearly do not concern representations of existing fact. For example, Plaintiffs

8    allege that they relied on unspecified representations that Netcentives's "shares were fairly priced in

9    the marketplace." (TAC ¶ 99.) Plaintiffs claim that the underwriter defendants Boutros and Duncan

10   (and not Longinotti) represented that "the then current price of Netcentives shares was below market

11   value." (*Id.* ¶ 101.) These are non-actionable statements of opinions, predictions that in the future

12   the market price will stay the same or increase.

13       Similarly, Plaintiffs' averments about their post-merger role in Netcentives concern merely

14   general statements of future events. In light of this Court's Order, Longinotti will not repeat his

15   arguments in this regard. Even if this Court concludes that alleged promises of future roles at

16   Netcentives were false when made, such promises would be insufficient to sustain Plaintiffs' fraud

17   claims against Longinotti because Plaintiffs have failed to plead justifiable reliance on such a

18   statement by Longinotti (as opposed to such a statement by a party allegedly owing fiduciary duties

19   to Plaintiffs), as set forth *supra*.

20       This leads to another failing in Plaintiffs' claim for fraud based on alleged representations

21   about their future role at Netcentives. Fraud plaintiffs must plead damages, like the other necessary

22   elements, with particularity. *See* FRCP 9(b); *Lazar*, 12 Cal. 4th at 638. Plaintiffs have provided no

23   facts indicating that they suffered any damages as a result of allegedly false representations that they

24   would be "important players" at Netcentives. In that regard, Plaintiffs have not alleged that they did

25   not receive their agreed to compensation. Instead, Plaintiffs *have* alleged that they resigned shortly

26   after the March 3, 2000 Merger and after negotiating "exit packages." (TAC ¶ 147.) Plaintiffs also

27   have alleged that shortly after their resignations, Netcentives filed for bankruptcy. (*Id.* ¶ 150.)

28   Therefore, Plaintiffs have failed to plead the element of damages as to this future employment claim

- 12 -

1  because they elected to resign and accept payment from Netcentives shortly before Netcentives went

2  under.

### 5. The Claims For Fraud Or Negligent Misrepresentation Based On Omission Of Material Information Fail.

5       Plaintiffs attempt to base their negligent misrepresentation claim on alleged omissions of

6  material fact by Longinotti. (*See* TAC ¶¶ 311-19, 369-75.) A negligent misrepresentation claim

7  requires the assertion of that which is not true without a reasonable ground for believing it to be

8  true. *See* Civil Code § 1710. Omissions cannot form the basis for a negligent misrepresentation

9  claim. *See Yanase v. Auto. Club of S. Cal.*, 212 Cal. App. 3d 468, 473 (1989).

10      To the extent that Plaintiffs are bringing a claim against Longinotti for fraud by omission,

11  the TAC does not allege any material information that Longinotti possessed yet failed to disclose. A

12  fraud claim based on concealment must allege specifically the concealment of particular facts and

13  the defendant's duty to disclose the same. *See Goodman v. Kennedy*, 18 Cal. 3d 335, 347 (1976).

14  Plaintiffs must plead concrete facts known to Longinotti when Longinotti engaged in the offending

15  conduct, or omitted to do an act. *See Stansfield v. Starkey*, 220 Cal. App. 3d 59, 73 (1990); *In re

16  Syntex Corp. Sec. Litig.*, 855 F. Supp. 1086, 1095 (N.D. Cal. 1994). The TAC's "vague, canned or

17  form allegations" are no substitute for this required particularity. *In re Syntex*, 855 F. Supp. at 1095.

18  Plaintiffs, therefore, fail to allege with any particularity that Longinotti made false statements by

19  omitting material information.

### B. Plaintiffs' Claims For Breach Of Fiduciary Duty, Aiding And Abetting Breach Of Fiduciary Duty, And Negligence Must Be Dismissed Because Plaintiffs Fail To Allege Any Legally Cognizable Duty.

22      Plaintiffs allege that Longinotti, an adverse party in arms-length negotiations with Plaintiffs,

23  nevertheless owed a legal duty to them. The law does not recognize any such duty absent special

24  circumstances, none of which are alleged in the TAC. Longinotti expressly joins in, and

25  incorporates herein, Defendant Shell's arguments regarding the law applicable to Plaintiffs' breach

26  of fiduciary duty and aiding and abetting breach of fiduciary duty claims. (*See* Shell's

27  Memorandum of Points and Authorities in Support of Motion to Dismiss ("Shell's Mot. to

28  Dismiss") at V.B. 1-2.)

- 13 -

1.    **The TAC Does Not Adequately Allege Any Fiduciary Duty Owed By Longinotti To Plaintiffs.**

The TAC describes nothing more than arms-length bargaining between Plaintiffs, on the one hand, and Netcentives and the underwriter defendants, on the other hand, over the course of several months leading up to the Merger. (*See* TAC ¶¶ 73-113.) Longinotti, who was part of the principal negotiating team for Netcentives, *not* UVN (*see id.* ¶ 18), had no duty to act on behalf of, or for the benefit, of Plaintiffs as owners of UVN. Indeed, if Longinotti had acted during these negotiations in accord with a fiduciary duty to Plaintiffs, he would have been violating his fiduciary duty of loyalty to Netcentives as its representative in the negotiations with UVN. Longinotti dealt with Plaintiffs, sophisticated executives (Plaintiffs were "experts" in their field with over "twenty years" of experience and "stature in the market" (*see* TAC ¶¶ 58-59)), on equal terms.[5] Plaintiffs' allegations do not support a "superior position" by Longinotti such as to support a fiduciary duty. *See Barbara A. v. John G.,* 145 Cal. App. 3d 369, 382-83 (1983).

In addition, Plaintiffs merely state in conclusory fashion that Longinotti "owed fiduciary duties to Plaintiffs" because he induced Plaintiffs to "reasonably repose trust and confidence" in him. (TAC ¶ 42.) Such conclusory pleading is insufficient under Rule 9(b) in that Plaintiffs do not specify why Longinotti, who was engaged in arms-length negotiations with Plaintiffs, would have owed Plaintiffs any special duty. *See* Order at 9. *See, e.g., Hudson v. Sherwood Secs. Corp.,* No. C-80-20344-WAI, 1989 WL 534960, at *3 (N.D. Cal. May 9, 1989) (dismissing conclusory fiduciary duty claim unsupported by factual allegations).

---

[5]  Plaintiffs attempt to avoid this obvious pleading deficiency by asserting that plaintiff Shein "was a shareholder of Netcentives," acted "on behalf of" and as an "agent" of the other Plaintiffs in the Merger, and disclosed his ownership to defendants. (TAC ¶ 47.) This has nothing to do with the question of whether Longinotti owed a fiduciary duty to any of the Plaintiffs (including Shein) in the negotiations between Netcentives (Longinotti's employer) and UVN for the acquisition of Plaintiffs' company, UVN. Longinotti owed no fiduciary duty to them for his conduct in those negotiations, as stated in the authority cited above. To the extent that Shein wants to assert a fiduciary duty claim against Longinotti regarding the fairness of the deal to Netcentives or for any alleged misrepresentations, as a shareholder of Netcentives, Shein has alleged no such facts, and moreover, such a claim would be no different than that of any other Netcentives shareholder and, therefore, derivative and subject to dismissal. *See Schuster v. Gardner,* 127 Cal. App. 4th 305 (2005).

JOHN F. LONGINOTTI'S MOTION TO DISMISS
AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS                    Case No. C 03-02061 TEH

2. **The Amended Complaint Does Not Adequately Allege A Claim For Aiding And Abetting Breach Of Fiduciary Duty Against Longinotti.**

As a matter of law, the facts alleged by Plaintiffs do not support a claim for relief against Longinotti for aiding and abetting breach of fiduciary duty.

Second, even if Plaintiffs had alleged a fiduciary duty owed to them by Longinotti, and they do not, the aiding and abetting cause of action against Longinotti would still fail because Plaintiffs have not adequately alleged active participation by Longinotti in the wrongdoing. *See In re U.S. Grant Hotel Associates, Ltd. Sec. Litig.*, 740 F. Supp. 1460, 1465 (S.D. Cal. 1990); *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 483 (1998); *Aaron v. Moderna*, No. C97-0233 FMS, 1997 WL 564064, at *10 (N.D. Cal. Aug. 27, 1997) ("Regardless of whether or not [plaintiffs] have successfully pled knowledge, plaintiffs have pled no facts suggesting any actual act of assistance or participation by [defendant].") Here, Plaintiffs plead no facts, other than the conclusory assertion that Longinotti "provided substantial assistance" to the other defendants in breaching their respective duties by "aiding, abetting, participating in and/or assisting . . . in their improper activity and wrongful conduct." (*See* TAC ¶ 285.) Plaintiffs also fail to allege any facts showing that Longinotti reaped the benefits of any other defendant's breach of a fiduciary duty. *Lubin*, 688 F. Supp. at 1454. *Richardson v. Reliance Nat. Indemnity Co.*, No. C-99-2952 CRB, 2000 WL 284211, at * 11 (N.D. Cal. Mar. 9, 2000).

Plaintiffs do not make any factual allegations showing that Longinotti assisted the underwriter defendants, or anybody else, in alleged breaches of any duties owed to Plaintiffs. Accordingly, the Court should dismiss Plaintiffs' claim against Longinotti for aiding and abetting breach of fiduciary duty.

3. **The TAC Does Not Adequately Allege A Claim For Negligence Against Longinotti.**

Longinotti expressly joins in, and incorporates herein, Defendant Shell's arguments regarding the law applicable to Plaintiffs' negligence claim. (*See* Shell Mot. to Dismiss at Section V.B.3.) Plaintiffs attempt to impose sweeping duties to merely *potential* shareholders on Longinotti, a corporate officer of Netcentives, *not* UVN. Longinotti's relationship with Plaintiffs

- 15 -

1   was as an equal engaged in arms-length negotiation of a potential contractual relationship, and, as

2   the Merger Agreement clearly states, both Netcentives and UVN were represented by counsel in the

3   "negotiation, preparation and execution" of the agreement. (*See* Order at 7-8.) As such, Longinotti

4   did not owe Plaintiffs any special duty. To hold otherwise would be to require businesspeople to

5   look out not only for their own interests, but those of the party across the table, in every business

6   transaction.

7   Finally, even had Plaintiffs sufficiently alleged a duty on the part of Longinotti, Plaintiffs

8   have made no factual allegations showing that Longinotti breached any duty. Instead, the entirety of

9   Plaintiffs' allegations are devoted to recounting the steps of the merger negotiations and the

10   underwriter defendants' alleged historical practices regarding IPOs.[6] Accordingly, the Court should

11   dismiss the claim for negligence against Longinotti.

12   **C.   Plaintiffs' Corporations Code Claims Fail.**

13   Longinotti expressly joins in, and incorporates herein, Defendant Shell's arguments

14   regarding the law applicable to Plaintiffs' Corporations Code claims, including the argument in

15   Section V.D.1. that Plaintiffs' claims are time-barred by section 25506 of the Corporations Code.

16   (*See* Shell's Mot. to Dismiss at Section V.D.)

17   Plaintiffs allege in Count X that Longinotti violated Sections 25400(d) and 25500 of the

18   California Corporations Code. California law requires that a defendant "directly participate" in

19   selling or offering to sell securities to be liable under Section 25500. *See Kamen v. Lindly*, 94 Cal.

20   App. 4th 197, 204-06 (2001) (Sections 25400 and 25500 apply only to defendants engaged in

21   market activity at time of misrepresentations, i.e., issuers, broker-dealers or others similarly situated

22   that directly sell securities (citations omitted)). Plaintiffs do not, and cannot, allege that Longinotti

23   sold Netcentives's securities or was an issuer, broker-dealer, or other person "directly participating"

24   in a sale of securities, and thus fail to state a claim under sections 25400 and 25500. Nor, as set

25   _____

26   [6] Plaintiffs, in summary fashion, allege that Longinotti owed a duty to them to comply with the
"applicable rules and regulations of the SEC." (TAC ¶ 297.) There is a complete lack of factual

27   allegations in the TAC supporting the argument that Longinotti owed such a duty or that he
breached it. Plaintiffs have provided no grounds to find that the SEC rules create a cognizable duty

28   to Plaintiffs.

- 16 -

1  forth above, have Plaintiffs alleged any facts showing wrongful conduct or scienter by Longinotti,

2  with regard to market manipulation or otherwise. *Id.* § 25500. *See California Amplifier*, 94 Cal.

3  App. 4th 102, 112 (2001) ("We conclude that the purpose and intent of the willful participation

4  requirement is to clarify and underscore the high level of scienter required for a violation of section

5  25500. . . . [It is limited to] situations where there is an intent to defraud through a knowingly false

6  statement.  Only persons who willfully, not merely recklessly, violate section 25400, subdivision (d)

7  can be liable for damages.").

8         Plaintiffs also improperly assert a claim against Longinotti under section 25403 in

9  Count XIII of the TAC.  This section is a statement of what is unlawful, similar to section 25400 –

10 but it does not create a private civil remedy.[7]

11     **D.     Section 17200 Does Not Apply To Securities Transactions, Therefore, Plaintiffs'**
           **Unfair Business Practices Claim Must Be Dismissed.**
12

13        In implicit recognition that they are unable to state a claim under California's Corporations

14 Code against Longinotti for artificial inflation of Netcentives's share price, Plaintiffs have attempted

15 to manufacture an unfair business practices claim under California Business and Professions Code

16 section 17200.  Count XIX asserts a violation of Section 17200 and alleges that Longinotti engaged

17 in unfair and unlawful business practices by exchanging overvalued Netcentives's shares for

18 plaintiffs' UVN shares.  (*See* TAC ¶ 390-91.)  This claim must be dismissed because Section 17200

19 does not apply to securities transactions.  In *Bowen v. Ziasun Technologies, Inc.*, 116 Cal. App. 4th

20 777, 786-90 (2004), the court, in a thoroughly reasoned opinion, concluded that California's "little

21 FTC Act" (Section 17200), like the actual FTC Act, was never meant to apply to securities

22 transactions and, therefore, dismissed claims for unfair competition based on misstatements and

23 omissions of material fact in connection with the sale of securities. *See also Shearson Lehman*

24 *Bros, Inc. v. Greenberg*, Nos. CV-93-0609-R, 93-0623-R, 1993 WL 144856, at *1 (C.D. Cal. March

25 _____

26 [7]  Moreover, and beyond Plaintiffs' failure to plead a section under which they would have a civil
     action for liability, Plaintiffs have failed to even plead facts establishing a violation – they have not
27 provided any factual allegations showing Longinotti's substantial assistance in the unidentified
     violation of the "California Corporate Securities Law of 1968," or Longinotti's control over
28 someone else's violation.

- 17 -

1   15, 1993), *aff'd, Shearson Lehman Brothers, Inc. v. Greenberg*, 60 F.3d 834 (9th Cir. 1995) (Cal.

2   Bus. & Prof. Code § 17200 is inapplicable to securities transactions); *Spinner Corp. v. Princeville*

3   *Development Corp.*, 849 F.2d 388 (9th Cir. 1988) (Hawaii's "baby" FTC Act, essentially identical

4   to California's Section 17200, does not apply to securities transactions).

5       Moreover, even if Plaintiffs could maintain an unfair competition claim based on securities

6   transactions, Plaintiffs have alleged no facts supporting their claim that Longinotti participated in

7   the underwriter defendants' alleged schemes to manipulate Netcentives's stock price.  An unfair

8   competition claim, particularly one based on fraud, must plead the supporting facts with

9   particularity. *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993).  There is no

10  vicarious liability under Section 17200: rather, "a defendant's liability must be based on his

11  personal participation in the unlawful practices and unbridled control over the practices that are

12  found to violate section 17200." *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002).

13      Finally, Plaintiffs' claim fails for the additional reason that it improperly seeks damages

14  from Longinotti.  Damages cannot be recovered for a violation of California Business and

15  Professions Code section 17200.  *See Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266

16  (1992).  Instead, plaintiffs are entitled only to seek restitution or injunctive relief.  *Cel-Tech*

17  *Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 179 (1999).

18      Plaintiffs attempt to cast their damages claim as one for disgorgement.  (*See* TAC ¶ 392.)

19  However, such an attempt to recast a damages claim recently was rejected by the California

20  Supreme Court in *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1150-51 (2003).

21  Moreover, even if Plaintiffs could cast their claim for damages as one for restitution, such a claim

22  for restitution would not be maintainable against Longinotti, as Plaintiffs do not (and cannot) allege

23  that Longinotti received anything from Plaintiffs.  *See Cortez v. Purolator Air Filtration Prods. Co.*,

24  23 Cal.4th 163, 177 (2000) (holding that restitution is the return of money acquired from an

25  individual to that individual).

26

27

28

JOHN F. LONGINOTTI'S MOTION TO DISMISS
AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS                    Case No. C 03-02061 TEH

1

2

**E.     Plaintiffs' Conspiracy and "Acting in Concert" Claims Against Longinotti Fail For Lack Of Underlying Wrongful Conduct.**

3

Plaintiffs fail to state their conspiracy claim because they have not alleged Longinotti's

4   agreement to participate in an unlawful act with the requisite heightened particularity. *See Alfus v.*

5   *Pyramid Technology Corp.*, 764 F.Supp. 598, 606-07 (N.D. Cal. 1991) (dismissing conspiracy claim

6   in a securities fraud action because Rule 9(b) particularity requirement applied and plaintiff had

7   failed to plead with particularity the defendant's tacit understanding or agreement to participate in

8   an unlawful act). It is not enough to conclusorily allege, as Plaintiffs do, that "Defendants," to

9   include Longinotti, entered into a conspiracy with intent to commit violations of the law. Plaintiffs

10  describe the purported conspiracy as consisting of "systematic, institutionalized process by which

11  CSFB and its employees agreed to participate in, and did participate in, to illegally manipulate the

12  market price of shares in IPOs underwritten by CSFB, including the Netcentives IPO which violated

13  law." (TAC ¶ 383.) Therefore, once again, Plaintiffs allege a broad course of conduct by the CSFB

14  Defendants and then conclusorily allege that "Defendants," to include Longinotti, conspired

15  together to publish a false prospectus for the Netcentives IPO and manipulate the stock price. This

16  is conclusory pleading. Nowhere in the TAC do Plaintiffs allege facts from which one could infer

17  that Longinotti agreed to enter into such a conspiracy. Facts are required. In *Alfus*, the court found

18  that allegations that defendants were corporate insiders and had conspired to issue misleading

19  reports to the SEC and their shareholders were insufficient and dismissed the conspiracy claim. *See*

20  *Alfus*, 764 F.Supp. at 607. The court required particular facts showing the defendant's agreement to

21  enter into a conspiracy. Such facts are similarly lacking in this case. Indeed, the TAC broadly

22  alleges a general CSFB plan to inflate stock with tie-ins and other schemes, and that Netcentives

23  was just another IPO for CSFB to do this with – the TAC does not factually allege Longinotti's

24  agreement to enter into such a conspiracy.

25

Plaintiffs' Count XVII, entitled "Acting in Concert," is, to the extent it is recognized at all,

26  simply an antiquated means of phrasing conspiracy and imposing liability, and fails for the same

27  reasons. *See Frost v. Hanscome*, 198 Cal. 550, 551, 557 (1926) (noting plaintiff claimed defendants

28  were acting in concert to defraud him, and proceeding to define conspiracy). Accordingly, the Court

- 19 -

1   should dismiss the purported conspiracy and "acting in concert" claims against Longinotti.

2   **V.   CONCLUSION**

3           For the reasons set forth above, Longinotti respectfully requests that the Court dismiss the

4   claims in the Third Amended Complaint against him without leave to amend. This case was filed

5   more than three years ago, improperly, in Arizona. Since that time, Plaintiffs have had numerous

6   opportunities to state a claim against Longinotti, and have amended their complaint three times, to

7   no avail. As a result, Longinotti has been forced to incur the unwarranted expense of responding to

8   Plaintiffs' baseless claims on a repetitive basis. Courts generally assess five factors when deciding

9   whether to dismiss a complaint without leave to amend: (1) bad faith; (2) undue delay; (3) prejudice

10  to the opposing party; (4) futility of amendment; and (5) whether plaintiff has previously amended

11  his complaint. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). "The district

12  court's discretion to deny leave to amend is particularly broad where plaintiff has previously

13  amended the complaint." *Id.* Longinotti respectfully submits that the last four factors compel

14  dismissal without leave to amend of Plaintiffs' Third Amended Complaint against Longinotti.

15

16  DATED April 11, 2005                          BERGESON, LLP

17

18                                               Caroline McIntyre
                                                 Attorneys for Defendant
19                                               JOHN F. LONGINOTTI

20

21

22

23

24

25

26

27

28