STEPHEN S. MAYNE (SBN 49631, *smayne@steefel.com*)
JOSEPH E. FLOREN (SBN 168292, *jfloren@steefel.com*)
DAVID T. VANALEK (SBN 197810, *dvanalek@steefel.com*)
STEEFEL, LEVITT & WEISS
A Professional Corporation
One Embarcadero Center, 30th Floor
San Francisco, CA 94111-3719
Telephone: (415) 788-0900
Facsimile: (415) 788-2019

Attorneys for Defendant
WEST SHELL III

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FRANK SCOGNAMILLO, et al.,

Plaintiffs,

v.

CREDIT SUISSE FIRST BOSTON CORPORATION, et al.,

Defendants.

CASE NO. CV 03-2061 TEH

**NOTICE OF MOTION AND MOTION OF DEFENDANT WEST SHELL III TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: June 13, 2005
Time: 10:00 a.m.
Ctrm: 12, 19th Floor
Judge: Hon. Thelton E. Henderson

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

# TABLE OF CONTENTS

Page

I. STATEMENT OF THE ISSUES ..... 2

II. PRELIMINARY STATEMENT ..... 2

III. RELEVANT FACTS AS SET FORTH IN THE TAC ..... 4

IV. PROCEDURAL BACKGROUND ..... 6

V. ARGUMENT ..... 6

A. Dismissal of the TAC Under the Rule 12(b)(6) Standard Is Proper ..... 6

B. Plaintiffs' Claims for Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, and Negligence Must Be Dismissed Because Plaintiffs Fail to Allege Any Legally Cognizable Duty Owed by Shell to Plaintiffs. ..... 7

1. The Breach of Fiduciary Duty Claim as Against Shell Fails as a Matter of Law ..... 7

2. The Aiding and Abetting Breach of Fiduciary Duty Claim as Against Shell Fails as a Matter of Law ..... 11

3. The Negligence Claim as Against Shell Fails as a Matter of Law ..... 12

C. The Counts for Common-Law and Statutory Fraud and Negligent Misrepresentation Fail for Lack of Reasonable Reliance and Fall Far Short of Minimum Pleading Standards ..... 14

1. Plaintiffs Cannot Allege Reasonable and Justifiable Reliance on Any Misrepresentation by Shell ..... 15

(a) Plaintiffs Cannot Allege Reliance as to "Completed Transactions." ..... 15

(b) Plaintiffs Cannot Allege Reliance as to Future Roles at Netcentives ..... 17

2. Plaintiffs' Remaining Allegations of Misrepresentations Lack the Particularity Required by Rule 9(b) ..... 18

(a) Plaintiffs Fail To Identify Any Concrete, Particularized Misrepresentations Of Fact ..... 18

(b) Plaintiffs Allege No Facts Demonstrating Falsity ..... 20

D. Plaintiffs' Claims Under The California Corporations Code (Counts XI and XIII) Also Fail ..... 21

1. Plaintiffs' California Corporations Code Claims Are Time-Barred ..... 21

2. Plaintiffs Fail to Allege, and Cannot Allege, Facts Supporting Shell's Purported Violation of Corporations Code Sections 25400, 25500 and 25403 ..... 22

**TABLE OF CONTENTS**
**(continued)**

**Page**

E. Plaintiffs' Unfair Business Practices Claims, And Claims for Conspiracy And Acting In Concert Must Be Dismissed........ 23

VI. CONCLUSION........ 25

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

## TABLE OF AUTHORITIES

Page

**CASES**

*Aaron v. Moderna*, 1997 WL 564064 (N.D. Cal. Aug. 27, 1997) ........ 11

*Alfus v. Pyramid Tech. Corp.*, 764 F.Supp. 598 (N.D. Cal. 1991) ........ 24

*Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171 (Del. 1988) ........ 9

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994) ........ 12, 24

*April Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805 (1983) ........ 5

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) ........ 7

*Bank of the West v. Superior Court*, 2 Cal. 4th 1254 (1992) ........ 24

*Barbara A. v. John G.*, 145 Cal. App. 3d 369 (1983) ........ 8, 10

*Beverly v. Network Solutions, Inc.*, 1998 WL 320829 (N.D. Cal. 1998) ........ 13

*Bowen v. Ziasun Technologies, Inc.*, 116 Cal. App. 4th 777 (2004) ........ 24

*California Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102 (2001) ........ 22, 23

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 68 Cal. App. 4th 445 (1998) ........ 11

*Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994) ........ 7

*Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197 (1983) ........ 8

*Copesky v. Superior Court*, 229 Cal. App. 3d 678 (1991) ........ 8

*Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163 (2000) ........ 24

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Davis v. City of Oakland*,
1998 WL 196470 (N.D. Cal. 1998)........ 13

*Desert Healthcare Dist. v. Pacificare, FHP, Inc.*,
94 Cal. App. 4th 781 (2001)........ 14

*Dirks v. SEC*,
463 U.S. 646 (1983)........ 16

*Endo v. Albertine*,
812 F. Supp. 1479 (N.D. Ill. 1993)........ 9

*Frances T. v. Village Green Owners Assoc.*,
42 Cal. 3d 490 (1986)........ 13

*Frost v. Hanscome*,
198 Cal. 550 (1926)........ 25

*Goldstein v. Enoch*,
248 Cal. App. 2d 891 (1967)........ 17

*Gonsalves v. Hodgson*,
38 Cal. 2d 91 (1951)........ 9, 15

*Guido v. Koopman*,
1 Cal. App. 4th 837 (1991)........ 15

*Hartong v. Partake, Inc.*,
266 Cal. App. 2d 942 (1968)........ 17

*Heckman v. Ahmanson*,
168 Cal. App. 3d 119 (1985)........ 11

*Hudson v. Sherwood Secs. Corp.*,
1989 WL 534960 (N.D. Cal. May 9, 1989)........ 11

*In re 3COM Sec. Litigation*,
761 F. Supp. 1411 (N.D. Cal. 1990)........ 11

*In re County of Orange*,
203 B.R. 983 (Bankr. C.D. Cal. 1996)........ 12

*In re GlenFed*,
42 F.3d 1541 (9th Cir. 1994)........ 20

*In re Infonet Services Corp. Sec. Litig.*,
310 F. Supp. 2d 1106 (C.D. Cal. 2003)........ 22

*In re Marriage of Varner*,
55 Cal. App. 4th 128 (1997)........ 8

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*In re Merrill Lynch & Co., Inc.*,
273 F. Supp. 2d 351 (S.D.N.Y. 2003) ........ 21

*In re Sagent Technology*,
278 F. Supp. 2d 1079 (N.D. Cal. 2003) ........ 10

*In re U.S. Grant Hotel Assocs., Ltd. Sec. Litig.*,
740 F. Supp. 1460 (S.D. Cal. 1990) ........ 11

*Kamen v. Lindly*,
94 Cal. App. 4th 197 (2001) ........ 22

*Kienel v. Lanier*,
378 S.E.2d 359 (Ga. App. 1989) ........ 9

*Kolodge v. Boyd*,
88 Cal. App. 4th 349 (2001) ........ 15

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ........ 24

*Kramas v. Sec. Gas & Oil, Inc.*,
672 F.2d 766 (9th Cir. 1982) ........ 21

*Kruse v. Bank of America*,
202 Cal. App. 3d 38 (1988) ........ 17

*Lubin v. Sybedon Corp.*,
688 F. Supp. 1425 (S.D. Cal. 1988) ........ 7

*Mehrtash v. Mehrtash*,
93 Cal. App. 4th 75 (2001) ........ 24

*Mendoza v. City of Los Angeles*,
66 Cal. App. 4th 1333 (1998) ........ 13

*Mitsui Manufacturers Bank v. Superior Court*,
212 Cal. App. 3d 726 (1989) ........ 9

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ........ 6

*Neilson v. Union Bank of Cal.*,
290 F. Supp. 2d 1101 (C.D. Cal. 2003) ........ 12

*Ortho-Med. Inc. v. Micro-Aire Surgical Instruments, Inc.*,
1995 WL 293180 (C.D. Cal. 1995) ........ 11

*Quelimane Co. v. Stewart Title Guaranty Company*,
19 Cal. 4th 26 (1998) ........ 13

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Reyes v. Atlantic Richfield Co.*, 12 F.3d 1464 (9th Cir. 1993) ..... 13

*Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001) ..... 21

*SEC v. Lund*, 570 F. Supp. 1397 (C.D. Cal. 1983) ..... 16

*T.L. Martin v. U-Haul Co. of Fresno*, 204 Cal. App. 3d 396 (1988) ..... 8

*Tregenza v. Great American Communications Co.*, 12 F.3d 717 (7th Cir. 1993) ..... 21

*Weiner v. Fleischman*, 54 Cal. 3d 476 (1991) ..... 5

*Worldvision Enterprises, Inc. v. American Broadcasting Cos., Inc.*, 142 Cal. App. 3d 589 (1983) ..... 10

**STATUTES**

**California Civil Code Sections:**

1709 ..... 14

1710 ..... 14

**California Corporations Code Sections:**

25400 ..... 2, 22, 23

25400(d) ..... 22, 23

25403 ..... 2, 22, 23

25500 ..... 2, 22, 23

25506 ..... 21

**Federal Rule of Civil Procedure:**

9(b) ..... passim

**OTHER AUTHORITIES**

Exchange Act Rule 13a-11, 14 C.F.R. § 240.13a-11 ..... 16

Securities Exchange Act of 1934, section 13(a), 15 U.S.C. § 78m ..... 16

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

**NOTICE AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 13, 2005 at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Thelton E. Henderson, Judge of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, in Courtroom 12, 19th Floor, San Francisco, California 94102, Defendant West Shell III ("Shell") will and hereby does move this Court to dismiss with prejudice Plaintiffs' Third Amended Complaint in the above-captioned matter pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) because the TAC fails to state claims upon which relief may be granted. As instructed by this Court in its March 21, 2005 Order Granting in Part and Denying in Part the CSFB Defendants' Motion to Dismiss ("Order"), Defendant Shell has taken into account the Court's rulings and does not intend to raise arguments that the Court has rejected.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities that follows and the Request for Judicial Notice ("Shell's RJN") served and filed herewith, any further briefing, the arguments of counsel at any hearing, the files and records of this case, and such other matters that the Court may consider.

In addition, for purposes of brevity and to reduce the duplication of arguments, in compliance with the spirit of this Court's September 21, 2004 Scheduling Order in this matter, Defendant Shell hereby joins in the Motion to Dismiss filed by Defendant John Longinotti, and specifically incorporates Sections IV.A.1-A.5 ("Plaintiffs' Fraud-Based Claims Do Not Satisfy The Heightened Pleading Standards of Rule 9(b)), IV.D. ("Section 17200 Does Not Apply to Securities Transactions, Therefore, Plaintiffs' Unfair Business Practices Claim Must Be Dismissed") and IV.E ("Plaintiffs' Conspiracy and 'Acting in Concert' Claims Against Longinotti Fail for Lack of Underlying Wrongful Conduct") as though set forth herein.

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF THE ISSUES

This Motion raises the following issues:

- Whether Plaintiffs have failed to state claims against Shell for breach of fiduciary duty, for aiding and abetting such breach, and for negligence, because Shell owed no cognizable duty to Plaintiffs in their arm's-length business negotiations;
- Whether Plaintiffs have failed to state claims for fraud, negligent misrepresentation, and negligence sounding in fraud because – to the extent such claims have been sufficiently alleged – they have failed to allege reasonable and justifiable reliance, and because the remainder of Plaintiffs' allegations fall well short of the particularity required by Federal Rule of Civil Procedure 9(b);
- Whether Plaintiffs' claims under sections 25400, 25500, and 25403 of the California Corporations Code are time-barred, whether Plaintiffs have failed to state claims thereunder by failing to allege Shell's direct participation in a sale of a security, and whether section 25403 allows a private right of action;
- Whether Plaintiffs have failed to state a claim for unfair competition under California Business and Professions Code section 17200 et seq. because that statute does not apply to securities transactions and cannot support a claim for damages, and because Plaintiffs have failed to allege facts sufficient to support such a claim as to Shell; and
- Whether Plaintiffs' purported claims for conspiracy and "acting in concert" should be dismissed for failing to plead cognizable claims for underlying liability.

As explained below, the answer to each of these issues is "Yes." Accordingly, Plaintiffs' Third Amended Complaint should be dismissed as to Shell without leave to amend.

## II. PRELIMINARY STATEMENT

This lawsuit is a belated attempt by four sophisticated businessmen to avoid responsibility for the sale of their company, UVN Holdings, Inc. ("UVN"), to Netcentives, Inc. ("Netcentives"), of which Defendant Shell was the CEO, at the height of the technology market bubble in March

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

2000. Like many other companies, Netcentives' business swooned and its stock price had collapsed by 2001, before Plaintiffs sold the $27 million in Netcentives stock for which they and their lawyers had negotiated as part of the consideration for UVN.

By March 2002, when Plaintiffs filed this lawsuit, Netcentives was judgment-proof. Plaintiffs accordingly had to cobble together claims against someone else. The principal alleged villains of their latest and most long-winded version of events, the Third Amended Complaint ("TAC"), are underwriter CSFB and its officers, who allegedly pumped up the value of Netcentives stock through undisclosed, manipulative IPO and trading practices and then cajoled Plaintiffs to sell their company for $34 million in cash and Netcentives stock by a series of further alleged misrepresentations and omissions about Netcentives' plans and business deals.

In contrast to the claims against the CSFB Defendants, which hinge upon the contention that those defendants acted as *advisors* towards Plaintiffs (who had lawyers, but no investment bankers of their own) and thus owed them *fiduciary duties* in connection with the transaction, Plaintiffs' sparse allegations against Defendant Shell show that he was the CEO of Netcentives, in an adverse negotiating position to Plaintiffs in arm's-length business discussions, who had no personal profit interest in the transaction and thus could not have owed them any such duty as a matter of law. This crucial distinction compels dismissal of Plaintiffs' claims against Shell.

As established below, Plaintiffs' duty-based claims against Shell fail because his duties were to Netcentives, not to them. Plaintiffs' IPO- and prospectus-related fraud claims are far too vague as to Shell to satisfy the specificity requirements for such claims, and Plaintiffs' relatively specific fraud-based allegations, concerning supposed oral misstatements by Shell as to the confidential business deals and future plans of Netcentives, fail because those astute businessmen could not have justifiably relied upon such statements in this context, in which Shell owed them no fiduciary duties, the allegedly crucial representations were omitted from or contrary to the agreements negotiated by the parties and, in the case of confidential "inside information" regarding a supposed Netcentives-CMGI deal, could not legally be relied upon *by anyone* in connection with any purchase or sale of Netcentives stock. Plaintiffs' remaining statutory claims are similarly without merit as to Shell in light of the irremediable flaws discussed below.

Mr. Shell was an individual corporate officer of Netcentives, and does not stand in the shoes of that bankrupt entity. Plaintiffs do *not* allege that Shell had any personal profit motive to engage in any improper conduct with respect to Plaintiffs, because he had none. Under law and justice, he does not belong in this case, and respectfully prays that the Court grant this Motion.

## III. RELEVANT FACTS AS SET FORTH IN THE TAC

Netcentives was a provider of "customer rewards" programs and similar services designed to assist businesses in acquiring, motivating, and retaining customers and employees. TAC ¶ 65. Shell was its CEO. TAC ¶ 18. In October 1999, Netcentives completed the initial public offering ("IPO") of its common stock, as to which Defendant CSFB acted as an underwriter. TAC ¶ 33.

UVN was a company that offered and sold credit card-based consumer loyalty programs. TAC ¶ 57. The Plaintiffs were the top executives and principal shareholders of UVN, and together owned approximately 93% of the company. TAC ¶¶ 26-32. Discussions between UVN and Netcentives regarding a possible acquisition began when one of the Plaintiffs contacted Netcentives. TAC ¶¶ 73-74. Over several months, Netcentives and its representatives (including CSFB and Defendants Quattrone, Duncan, Boutros, Shell, and Longinotti, collectively the "Individual Defendants") engaged in arm's-length negotiations with Plaintiffs and other UVN representatives, culminating in an agreement and consummation of the acquisition on March 3, 2000. TAC ¶¶ 72-87, 89-96, 98, 100-107, 109-129; Merger Agreement, Shell's RJN Exhibit B. In conjunction with the sale of UVN to Netcentives, Plaintiffs entered into Stockholder Agreements and Indemnity Agreements. Shell's RJN Exhibits C-D. Also as part of the transaction, Plaintiffs Scognamillo and Galasso entered into Employment Agreements with Netcentives. TAC ¶ 131-132; Shell's RJN Exhibit E. As Plaintiffs concede, "the agreements were silent as to Plaintiffs' roles and duties post merger." TAC ¶ 132.

Notwithstanding Plaintiffs' half-hearted attempts to characterize the transaction as a "joint venture" (*e.g.,* TAC ¶¶ 85, 89, 124), the operative contracts show conclusively that the UVN-Netcentives transaction was an acquisition of one company by another: Netcentives purchased UVN outright from Plaintiffs in exchange for cash, debt assumption, and Netcentives' common stock. TAC ¶ 113. Two of the Plaintiffs entered into employment contracts with Netcentives that

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

were terminable at will by either party, with or without cause. TAC ¶ 132; Shell's RJN Exhibit E at ¶¶ 1, 3, 5. None of the indicia of a "joint venture" were present here.[1]

During the months following Netcentives' acquisition of UVN, the Internet and technology stock bubble burst and the price of Netcentives common stock declined precipitously. TAC ¶ 149. With customers canceling contracts, Netcentives was unable to sustain its business model through the downturn. Netcentives declared bankruptcy in October 2001, and shortly thereafter the company's assets were liquidated for the benefit of its creditors. TAC ¶¶ 14, 150.

Although notably omitted from the TAC, beginning in June 2001, several putative class action lawsuits were filed against a variety of issuers and underwriters, including Netcentives and CSFB. Those suits allege material misrepresentations and omissions in the IPO registration statements and prospectuses relating to purported arrangements by the underwriters to inflate Netcentives' stock price (the "IPO Litigation"). Original Complaint ¶ 58.

Plaintiffs' TAC, which incorporates the themes of and attempts to piggyback on the IPO Litigation, attempts to alleges claims against Shell for negligence, negligent misrepresentation, fraud and deceit (both common law and California statutory provisions), breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conspiracy and acting in concert, state securities fraud, and unfair competition. TAC ¶¶ 263-392. Plaintiffs' claims rely upon three purported factual bases: (1) failure to disclose that CSFB and the "Individual Underwriter Defendants" (Quattrone, Duncan, and Boutros) purportedly received consideration from customers for allocation of shares in the Netcentives IPO and entered into tie-in or laddering arrangements with those customers; (2) alleged misstatements regarding the value of Netcentives' stock and its

---

[1] Under the relevant California law, "'[a] joint venture . . . is an undertaking by two or more persons jointly to carry out a single business enterprise for profit.'" *April Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 818-819 (1983) (citations omitted). "The elements necessary for its creation are: (1) joint interest in a common business; (2) with an understanding to share profits and losses; and (3) a right to joint control. (citations omitted)." *Id.* Joint ventures resemble partnerships in many respects. *Weiner v. Fleischman*, 54 Cal. 3d 476, 482 (1991) ("The distinction between joint ventures and partnerships is not sharply drawn. A joint venture usually involves a single business transaction, whereas a partnership may involve 'a continuing business for an indefinite or fixed period of time.'" (citations omitted)). Here, Netcentives' purchase of UVN does not amount to a "joint venture" under any of the elements set forth above.

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

future business prospects; and (3) alleged misrepresentations about the future roles of certain Plaintiffs at Netcentives.

Plaintiffs do not, however, allege any cognizable duty owed by Shell – the CEO of Netcentives – to Plaintiffs – then the officers and owners of UVN, its acquisition target – during the negotiations leading up to the acquisition. Nor do Plaintiffs point to any actionable misrepresentations, fraud, deceit, or unfair competition by Shell to Plaintiffs. Accordingly, for the reasons set forth below, this action should be dismissed as to Shell without leave to amend.

## IV. PROCEDURAL BACKGROUND

Plaintiffs filed this action in Arizona state court on March 1, 2002. TAC ¶ 51. Defendants removed the action to Arizona federal district court, and then moved to dismiss Plaintiffs' original complaint. Instead of responding to these motions to dismiss, Plaintiffs elected to amend their complaint, filing their First Amended Complaint on August 2, 2002. Defendants then moved again to dismiss the amended complaint, or in the alternative to transfer venue to the Northern District of California based on the forum-selection clause in the operative contracts. The court granted Defendants' motion to transfer venue and transferred the action to this Court on April 8, 2003. *Id.* Rather than face motions to dismiss their then-operative pleading, Plaintiffs filed a Second Amended Complaint on January 12, 2004. Plaintiffs amended their complaint yet again when they filed the Third Amended Complaint now before the Court on May 3, 2004. This Court thereafter vacated an initial round of motions challenging the TAC and directed the defendants to file briefs pursuant to a scheduling order. The CSFB Defendants filed motions to dismiss and to strike on September 27, 2004. This Court ruled upon CSFB's motions in March 2005, and invited Shell and the remaining individual defendants to re-submit their motions challenging the TAC in light of the guidance provided by the Court's March 2005 Order.

## V. ARGUMENT

### A. Dismissal of the TAC Under the Rule 12(b)(6) Standard Is Proper

Dismissal is proper under Rule 12(b)(6) where there is either (1) "no cognizable legal theory" or (2) "an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (*citing Balistreri v. Pacifica Police Dept.*,

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

901 F.2d 696, 699 (9th Cir. 1988)). Although a court must accept all material allegations in the complaint as true, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (discounting conclusory allegations and finding insufficient facts alleged to establish a cognizable legal claim).

Here, despite pleading hundreds of paragraphs of prose in their fourth attempt to state claims against Shell, as explained below in detail, Plaintiffs fail to state facts other than legally insufficient, conclusory allegations to support their purported claims against Defendant Shell.

**B. Plaintiffs' Claims for Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, and Negligence Must Be Dismissed Because Plaintiffs Fail to Allege Any Legally Cognizable Duty Owed by Shell to Plaintiffs.**

Plaintiffs allege that Shell, the former CEO of Netcentives and a participant in arm's-length negotiations between Netcentives and UVN, owed legal duties to Plaintiffs, the former officers and shareholders of UVN, who were mere *prospective* shareholders of Netcentives. Unlike their claims against the CSFB Defendants – financial advisors who Plaintiffs allegedly thought were working on Plaintiffs' behalf in brokering the deal – Plaintiffs' claims against Shell are made against their principal opposing party in the merger negotiations, and would require the Court to find that Netcentives' CEO, while sitting on the opposite side of the proverbial table from Plaintiffs, nevertheless owed them a fiduciary duty. Because the law does not impose a fiduciary or other duty to one's adversary in business negotiations under these circumstances, this Court should dismiss with prejudice the claims against Shell for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and negligence.

**1. The Breach of Fiduciary Duty Claim as Against Shell Fails as a Matter of Law**

In order to state a claim, Plaintiffs must satisfactorily allege the existence of a fiduciary relationship with the defendant against whom the claim is brought. *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1454 (S.D. Cal. 1988). In addition, before a defendant may be charged with a fiduciary duty, "he must either knowingly undertake to act on behalf of and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Id.*

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

Plaintiffs' general, conclusory allegations that Shell owed Plaintiffs a fiduciary duty utterly fail to satisfy this pleading burden. Indeed, the facts alleged in the TAC demonstrate that Shell owed no such duty to Plaintiffs, because the TAC simply alleges an arm's-length relationship between Shell and the Plaintiffs. Indeed, in sharp contrast to CSFB, which was an advisor rather than a principal in the negotiations, Shell as the CEO of Plaintiffs' counterparty in the discussions could not possibly have owed Plaintiffs such a duty.

California courts define a fiduciary relationship as:

> any relation existing between parties to a transaction wherein one of the parties is . . . duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can not take advantage from his acts relating to the interest of the other party without the latter's knowledge or consent.

*In re Marriage of Varner*, 55 Cal. App. 4th 128, 141 (1997). The essence of a fiduciary relationship is that the parties "do not deal on equal terms, because the person in whom trust and confidence is reposed is in a superior position to exert unique influence over the dependent party." *Barbara A. v. John G.*, 145 Cal. App. 3d 369, 382-83 (1983).

The courts consistently recognize that *no* fiduciary relationship arises between parties or their representatives in arm's-length business negotiations. *See T.L. Martin v. U-Haul Co. of Fresno*, 204 Cal. App. 3d 396, 412 (1988) ("California courts have not extended the 'special relationship' doctrine to include ordinary commercial contractual relationships."); *see also Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 221-222 (1983) ("The relationship of seller to buyer is not one ordinarily vested with fiduciary obligation, even though sellers routinely make representations concerning their product, often on the basis of a claimed expert knowledge about its utility and value. In such transactions, the seller is held to the mores of the marketplace. A fiduciary, by contrast, assumes duties beyond those of mere fairness and honesty in marketing its product – he must undertake to act on behalf of the beneficiary, giving priority to the best interest of the fiduciary."); *Copesky v. Superior Court*, 229 Cal. App. 3d 678, 693 n.14 (1991) (recognizing no fiduciary relationship exists where the parties

deal "at arms length and in commercial independence"); *Mitsui Manufacturers Bank v. Superior Court*, 212 Cal. App. 3d 726, 731 (1989) (contracting parties did not have fiduciary relationship where "transactions involved . . . quintessentially ordinary arms-length commercial transaction between two parties of equal bargaining strength, breaches of which are adequately remedied by ordinary contract damages"); *Gonsalves v. Hodgson*, 38 Cal. 2d 91, 98-99 (1951) (noting that the "parties here were engaged in a course of arms-length dealing"; holding "[t]here is no rule that parties to a contract may not act for their own interest during the execution of the contract. They have no duty of loyal representation of the opposing party in the relationship.").[2]

Here, the TAC alleges that Shell was the CEO of and a principal negotiator for Netcentives, not UVN. *See, e.g.*, TAC ¶¶ 81-82. Rather than a fiduciary relationship, the TAC describes an arm's-length negotiation between Plaintiffs, on the one hand, and Netcentives, on the other, over a period of months during which the structure and pricing of the transaction were aggressively and extensively negotiated by both sides. TAC ¶¶ 78-129.

Plaintiffs attempt to conjure up a fiduciary duty by alleging that Shell told them (i) that Plaintiffs would be a "key" part of Netcentives' senior management following the transaction (TAC ¶¶ 120-21, 271); (ii) that Shell had "superior inside information about Netcentives" (TAC ¶¶ 122-23, 272); and (iii) that the business transaction would be a "joint venture" (TAC ¶¶ 124, 271)), thus causing Plaintiffs to place "trust and confidence" in the Individual Defendants[3] (TAC ¶¶ 124, 271), which, in turn, supposedly led Plaintiffs "not [to] undertake to negotiate at any

---

2 *See also Endo v. Albertine*, 812 F. Supp. 1479, 1497 (N.D. Ill. 1993) (finding no claim for breach of fiduciary duty stated based on alleged misstatements and omissions in a Registration Statement and Prospectus made before plaintiffs became shareholders, and, thus, before defendants owed plaintiffs any fiduciary duty); *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174-76 (Del. 1988) (granting summary judgment in favor of defendants where claims were premised on existence of fiduciary duty owed to prospective shareholders); *Kienel v. Lanier*, 378 S.E.2d 359, 361 (Ga. App. 1989) (stock seller was not in confidential relationship with buyer and had no duty to represent or advance buyer's interests, even though buyer and sellers were directors and officers of corporations; parties were engaged in transaction with each other in an effort to further their own separate business objectives).

3 In their group pleading of the fiduciary duty, aiding and abetting fiduciary duty, and negligence causes of action, Plaintiffs fail to recognize the distinction between Shell and the CSFB-affiliated Individual Defendants, Boutros and Duncan.

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

arms-length bargaining." TAC ¶ 272. As a matter of law, however, these allegations – even if true and taken together – do not create a fiduciary duty between Plaintiffs and Defendant Shell. In the words of one California court, "The mere fact that in the course of their business relationships the parties reposed trust and confidence in each other does not impose any corresponding fiduciary duty in the absence of an act creating or establishing a fiduciary relationship known to law." *Worldvision Enterprises, Inc. v. American Broadcasting Cos., Inc.*, 142 Cal. App. 3d 589, 595 (1983).

Plaintiffs were experienced businessmen who held themselves out as experts in their field with great stature in the market, and who had negotiated business deals with numerous credit card issuers and other companies. TAC ¶¶ 55-64. Plaintiffs also admit that the negotiations with Netcentives were at arm's length – by acknowledging, at one point in the negotiation process, that "Plaintiffs would not move forward with the merger in all likelihood" and that Plaintiff Scognamillo concluded "that's it, the deal is over." TAC ¶¶ 116-17. Regardless of their allegations of "superior information" and their decision to "place trust in confidence" in the party against whom they were bargaining, Plaintiffs' own allegations affirmatively and conclusively demonstrate the absence of the superior position necessary to establish the existence of a fiduciary duty.[4] *See Barbara A.*, 145 Cal. App. 3d at 382-83.

Nor do Plaintiffs offer any factual allegations from which a fiduciary duty could be inferred. Instead, they merely state the insufficient legal conclusion that Shell had a "fiduciary

[4] Plaintiffs also apparently attempt to concoct a fiduciary liability theory based on Plaintiff Shein's open market purchase of 200 shares of Netcentives stock. TAC ¶¶ 28, 47, 270. Shein's ownership of Netcentives stock is irrelevant to Plaintiffs' claims. Plaintiffs were in an adverse negotiating relationship with Netcentives regardless of whether one of them coincidentally owned some Netcentives stock. As the company's CEO, Shell owed Netcentives (and thus, derivatively, the Netcentives shareholders) a duty to get the best deal possible *for Netcentives*, not for UVN or its shareholders. Further, to the extent Shein as a Netcentives shareholder seeks to assert a fiduciary duty claim against Shell regarding the fairness of the deal *to Netcentives*, or for any alleged misrepresentations, Shein has alleged no such facts. Moreover, such a claim would not differ from that of any other Netcentives shareholder, and would therefore be derivative in nature and subject to dismissal. *In re Sagent Technology,* 278 F. Supp. 2d 1079, 1085-1086 (N.D. Cal. 2003) ("[a] shareholder does not have standing to sue in an individual capacity for injury to the corporation. … [s]uch an action must be brought as a derivative action.") .

duty to Plaintiffs" because the Defendants "represented that they had superior inside information about Netcentives that Plaintiffs should rely upon." TAC ¶ 123. Unlike the CSFB Defendants, independent advisors who facilitated the negotiation of the acquisition of UVN by Netcentives, Shell was a principal of Netcentives, who negotiated from the opposite end of the table from Plaintiffs. Courts routinely dismiss fiduciary duty claims based on such bare, conclusory allegations. *See, e.g., Hudson v. Sherwood Secs. Corp.*, 1989 WL 534960 at *3 (N.D. Cal. May 9, 1989) (dismissing conclusory fiduciary duty claim unsupported by factual allegations). Nothing in the TAC warrants a different fate for Plaintiffs' fiduciary duty claim against Shell.

**2. The Aiding and Abetting Breach of Fiduciary Duty Claim as Against Shell Fails as a Matter of Law**

In an effort to bootstrap a fiduciary duty claim against Shell, Plaintiffs (using group pleading) allege that Shell aided and abetted breaches of fiduciary duties by all of the other defendants. To state a claim against Shell for aiding and abetting another defendant's breach of fiduciary duty, Plaintiffs were required to allege: (1) a fiduciary duty on the part of the alleged primary wrongdoer; (2) breach of that duty; (3) knowledge of the breach by the alleged aider and abettor (i.e., Shell); and (4) substantial assistance or encouragement of the wrongdoer by the aider and abettor. *Ortho-Med. Inc. v. Micro-Aire Surgical Instruments, Inc.*, 1995 WL 293180 at *12 (C.D. Cal. 1995) (citing *In re 3COM Sec. Litigation*, 761 F. Supp. 1411, 1418 (N.D. Cal. 1990)); *In re U.S. Grant Hotel Assocs., Ltd. Sec. Litig.*, 740 F. Supp. 1460, 1464 (S.D. Cal. 1990). The facts alleged by Plaintiffs utterly fail to support a claim against Shell for aiding and abetting breach of fiduciary duty.

Even assuming Plaintiffs have a claim against another primary wrongdoer for breach of fiduciary duty, the aiding and abetting cause of action against Shell would still fail because Plaintiffs have not alleged active participation by Shell in the claimed wrongdoing. *Heckman v. Ahmanson*, 168 Cal. App. 3d 119, 127 (1985); *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 68 Cal. App. 4th 445, 483 (1998); *Aaron v. Moderna*, 1997 WL 564064, *10 (N.D. Cal. Aug. 27, 1997) ("Regardless of whether or not [Plaintiffs] have successfully pled knowledge, plaintiffs have pled no facts suggesting any actual act of assistance or participation by

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

[defendant].”). Nor can they.

Plaintiffs offer nothing – not a single corroborating or explanatory fact – to support the blanket conclusion that Shell “provided substantial assistance” to the other Defendants in breaching their respective duties by “aiding, abetting, participating in and/or assisting each of the other [Defendants] . . . in their improper activity and wrongful conduct.” TAC ¶ 285. The most Plaintiffs offer is the conclusory claim that Shell “repeated” general statements of the other Defendants. TAC ¶¶ 121-22. Plaintiffs’ aiding and abetting breach of fiduciary duty claim should fail as against Shell for this reason alone.

Finally, because Shell owed no fiduciary duty to Plaintiffs (as explained above), he cannot be liable under California law for aiding and abetting a breach of fiduciary duty to Plaintiffs. *In re County of Orange*, 203 B.R. 983 (Bankr. C.D. Cal. 1996) (analyzing and analogizing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994) and dismissing aiding and abetting breach of fiduciary duty claim where defendant had no fiduciary duty to plaintiff.), *aff’d in part and rev’d in part on other grounds*, 245 B.R. 138 (C.D. Cal. 1997).[5] Any other result would unjustly warp the overriding principle that a corporate CEO such as Shell owes duties to his employer, *not* to its adversary in a business negotiation.

**3. The Negligence Claim as Against Shell Fails as a Matter of Law**

Plaintiffs’ negligence claim alleges that Shell, as a *Netcentives* officer, owed Plaintiffs a duty to “use reasonable care . . . in negotiating the Merger” and “to disclose material information

---

5 In its March 21, 2005 Order at page 5, footnote 1, this Court noted that “at least one court has found that a non-fiduciary can be liable for aiding and abetting under California law” and cited *Neilson v. Union Bank of Cal.,* 290 F. Supp. 2d 1101, 1137 (C.D. Cal. 2003). As to Shell, however, the reasoning of *Neilson* does not support such a claim. In the *Neilson* case, the district court observed that “to hold a non-fiduciary liable for aiding and abetting a fiduciary’s breach of his duties, *the non-fiduciary must have participated in the breach for personal gain or in furtherance of its own financial advantage*.” *Id.*, at 1122 (emphasis added). Here, Plaintiffs have not alleged that Shell participated in CSFB’s alleged breach of its fiduciary duty for Shell’s *personal* gain or in furtherance of his *own* financial advantage. There is *no allegation* that Shell sought personal profit through the sale of his personal Netcentives stock, for example, unlike in most securities fraud cases. Instead, in the context of this case, the only advantage Shell sought was that of Netcentives and its shareholders – actions that could only benefit Plaintiffs as prospective Netcentives shareholders. Accordingly, this Court should dismiss the aiding and abetting claim as against Shell.

relating to the offer and sale of Netcentives shares in the merger." TAC ¶ 296. To plead a claim for negligence, Plaintiffs must allege the existence of a duty, breach of that duty, causation and damages. *Davis v. City of Oakland,* 1998 WL 196470 at *4 (N.D. Cal. 1998) ("a plaintiff seeking to assert a negligence claim must allege that the defendant owed her a duty and breached that duty.") Thus, Plaintiffs were required to allege facts demonstrating that the relationship of the parties was such that Shell owed Plaintiffs an obligation to use reasonable care in connection with the merger negotiations. *See Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998). This they have not done. As a matter of law, "The only duty that an executive officer owes to a third person, whether he be an employee of the corporation or a complete stranger, is the same duty to exercise due care not to injure him which any person owes to another." *Frances T. v. Village Green Owners Assoc.*, 42 Cal. 3d 490, 506 n.12 (1986).

The existence of contractual relationship (or prospective relationship) between Netcentives (Shell's employer) and Plaintiffs does not create a separate duty of care. *See Reyes v. Atlantic Richfield Co.*, 12 F.3d 1464, 1472 (9th Cir. 1993) (finding no duty to disclose between parties to arm's length transaction); *see also Beverly v. Network Solutions, Inc.,* 1998 WL 320829 at *5 (N.D. Cal. 1998) ("Conduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law . . . the contract alone is not sufficient to base a claim in negligence.")

Plaintiffs try in vain to transmute what would otherwise be contract-based claims against bankrupt Netcentives into a tort claim against Shell by seeking to impose sweeping duties on the part of corporate officers to contract counterparties who are merely *potential* shareholders of the corporation. In the context of the arm's-length transaction from which this action arises, however, Shell owed Plaintiffs no such duty as a matter of law. Indeed, courts applying California law refuse to create duties of care supporting negligence claims in favor of sophisticated parties who are fully capable of protecting their own economic interests in ordinary business dealings. *See, e.g., Quelimane Co. v. Stewart Title Guaranty Company*, 19 Cal. 4th 26, 58 (1998) (refusing "to recognize a duty to avoid business decisions that may affect the financial interests of third parties"); *Desert Healthcare Dist. v. Pacificare, FHP, Inc.*, 94 Cal. App. 4th

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

781, 793 (2001) (refusing to impose negligence duty where plaintiff was a "sophisticated, knowledgeable entit[y], distinguishable from the 'presumptively powerless consumer"' and could protect itself "by exercising its own considerable bargaining power").

Plaintiffs acknowledge their high level of sophistication in the Complaint (*e.g.*, TAC ¶¶ 57-64), and the Court has previously recognized Plaintiffs' business acumen and representation by counsel in this case. Order at 7-8. There is no reason in law or justice to impose a duty of care towards such parties in business transactions, particularly on the part of an officer such as Shell who owes duties to Plaintiffs' opposing party in the negotiation. The Court should dismiss this claim as to Shell without leave to amend.

**C. The Counts for Common-Law and Statutory Fraud and Negligent Misrepresentation Fail for Lack of Reasonable Reliance and Fall Far Short of Minimum Pleading Standards**

Plaintiffs allege several fraud-based claims against Shell, couched in different language: count X entitled "fraud"; count VIII entitled "negligent misrepresentation"; and count XVI for alleged violations of California Civil Code sections 1709 and 1710 (for fraud and deceit). As set forth at length in Longinotti's Motion to Dismiss, under federal law, all claims sounding in fraud are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). Longinotti's Motion to Dismiss at 6-8**.** All of these claims sound in fraud, as they all rest (to the extent that they have any basis at all) on Plaintiffs' allegations that the underwriters artificially inflated Netcentives' share price through a variety of omissions and misstatements; that Shell purportedly made misstatements about non-public business transactions that Netcentives had concluded; and that Shell allegedly misrepresented the company's intentions for certain Plaintiffs' future roles when they would become Netcentives employees following the transaction. Plaintiffs' claim under Civil Code sections 1709 and 1710 simply duplicates their earlier allegations that Shell engaged in fraud and negligent misrepresentation, and does not merit separate analysis.

In denying (in part) the CSFB Defendants' Motion to Dismiss, the Court previously ruled that Plaintiffs' fraud-based claims as to alleged "completed transactions" by Netcentives and Plaintiffs' prospective future role at Netcentives satisfied the particularity requirements of Rule

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

9(b). As explained below, however, these claims fail for the separate reason that Plaintiffs have not (and cannot) sufficiently alleged that they reasonably and justifiably relied upon any purported misstatements by Shell. The remaining majority of Plaintiffs' generic prospectus-related and IPO-related fraud-based claims fail because they lack the requisite particularity. As such, Plaintiffs' fraud-based claims should be dismissed as to Shell in their entirety.

**1. Plaintiffs Cannot Allege Reasonable and Justifiable Reliance on Any Misrepresentation by Shell.**

As explained in Defendant Longinotti's Motion to Dismiss, in order to maintain claims based on fraud or misrepresentation, Plaintiffs must plead justifiable reliance with particularity. Longinotti's Motion to Dismiss at 7-8; *Gonsalves v. Hodgson*, 38 Cal.2d 91, 100-01 (1951)**.** In its March 21, 2005 Order, the Court observed that dismissal would be appropriate if Plaintiffs "… could prove no set of facts that would entitle them to relief." Order at p. 7. This Court further noted that, given Plaintiffs' years of business and legal experience, at first glance "[u]nder these circumstances, any reliance by Plaintiffs would … appear to be unreasonable." *Id.* The Court declined to dismiss these claims as to the CSFB Defendants, however, because the Court found that the CSFB Defendants may owe a fiduciary duty to Plaintiffs – such that it might not be unreasonable as a matter of law for Plaintiffs to rely on statements by those Defendants. *Id.*

Here, in sharp contrast (as explained above), Defendant Shell owed no such fiduciary duty to Plaintiffs. Accordingly, any purported reliance by Plaintiffs upon alleged oral statements by Shell under these circumstances – particularly given that none of those alleged representations were included within the extensive written representations, warranties, and covenants that the parties and their lawyers negotiated as part of the transaction (Shell's RJN Exhibit B) as this Court observed, is unreasonable. *See, e.g., Kolodge v. Boyd,* 88 Cal. App. 4th 349, 373 (2001); *Guido v. Koopman,* 1 Cal. App. 4th 837, 843-844 (1991). Plaintiffs' fraud-based claims as against Defendant Shell fail as a result.

**(a) Plaintiffs Cannot Allege Reliance as to "Completed Transactions."**

Plaintiffs' alleged reliance on purported statements by Shell concerning certain Netcentives business transactions, and in particular a supposed merger between Netcentives and

CMGI, is unreasonable as a matter of both logic and law. Netcentives, a public corporation, was obligated to report acquisitions and other material corporate developments to the public, as and when they occurred, through amended SEC filings. *See generally* Securities Exchange Act of 1934, section 13(a), 15 U.S.C. § 78m; Exchange Act Rule 13a-11, 14 C.F.R. § 240.13a-11; SEC Form 8-K (requiring reporting of all "material definitive agreements," including acquisitions). There is no question that there was no public disclosure by Netcentives of the purported "merger" with CMGI, about which Plaintiffs complain. Shell's RJN ¶ 6. Rather, Plaintiffs expressly allege that the CSFB Defendants told them that these transactions were confidential corporate developments, and that disclosure of these facts to Plaintiffs raised "insider information concerns." TAC ¶ 115.

Given the admittedly non-public nature of this information on which Plaintiffs claim to have relied, there are only two possible conclusions: the information regarding Netcentives' other business deals either (a) was not material; or (b) was material non-public information relative to the value of Netcentives stock. Either way, Plaintiffs' allegations cannot support fraud-based claims against Shell. If the information concerning "completed transactions" was not material, then it would not have affected Plaintiffs' decision-making process sufficiently to support a claim. On the other hand, if it was material non-public information, then Plaintiffs had a legal obligation *not* to rely upon this information and *not* to consummate the UVN-Netcentives transaction in order to gain a personal financial benefit (in millions of dollars of Netcentives stock, which under Plaintiffs' theory would have been *undervalued* due to the secret CMGI merger agreement). *See, e.g.*, *SEC v. Lund*, 570 F. Supp. 1397, 1403 (C.D. Cal. 1983) (applying insider trading liability under Exchange Act section 10(b) and Rule 10b-5 thereunder to "temporary insiders" who acquire material nonpublic information under a duty of confidence from a relationship with the corporation); *Dirks v. SEC*, 463 U.S. 646, 659 (1983) (applying insider trading liability where material nonpublic information acquired through a breach of confidence of which the tippee knew or should have known).

Plaintiffs' apparent assertion that they "justifiably relied" on what they believed to be material non-public information concerning Netcentives cannot serve as the basis for fraud-based

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

claims against Shell. *Kruse v. Bank of America*, 202 Cal. App. 3d 38, 54 (1988) ("Testimony concerning one's own reliance is legally insufficient evidence if such reliance is without justification (citation omitted); a party plaintiff's misguided belief or guileless action in relying on a statement on which no reasonable person would rely is not justifiable reliance"); *Hartong v. Partake, Inc.*, 266 Cal. App. 2d 942, 965 (1968) ("a plaintiff is not barred unless his conduct, in the light of his own information and intelligence, is preposterous and irrational.").[6]

No reasonable, law-abiding person would have relied on alleged inside information in the consummation of the UVN-Netcentives merger. Such conduct is not rational (as Plaintiffs, experienced business executives, would have knowingly violated various securities laws), and certainly should not be countenanced as reasonable and justifiable by this Court. Accordingly, Plaintiffs cannot claim that they justifiably relied here, and their fraud-based claims fail.

**(b) Plaintiffs Cannot Allege Reliance as to Future Roles at Netcentives.**

Plaintiffs' own version of events makes plain that they could not have reasonably relied on any alleged false promises by Shell concerning their prospective post-transaction roles at Netcentives. *After* Shell supposedly told Plaintiffs during the negotiations that Scognamillo and Galasso were slated to be "key members of Netcentives senior management and would work closely with Shell" (TAC ¶ 120), Plaintiffs acknowledge that Shell (a) presented Scognamillo and Galasso with employment contracts that "were silent as to Plaintiffs' roles and duties post merger;" (b) refused to allow Plaintiffs to negotiate any different language in those agreements; and (c) insisted that the agreements be signed in that form, or that Netcentives would not

---

6 One court explained the principle that renders any reliance unjustifiable here as follows:

"A party to an illegal contract or an illegal transaction cannot come into a court of law and ask it to carry out the illegal contract or to enforce rights arising out of the illegal transaction. He cannot set up a case in which he necessarily must disclose the illegal contract or the illegal transaction as the basis of his claim. . . .' A similar principle is bound to govern where the plaintiff who contends innocence discloses the fact that the transaction upon which he relies for recovery involves a violation of the law and he would, in effect, become a participant by his recovery. The courts will not lend assistance to persons whose claim for relief rests on an illegal transaction. (citation omitted.) Where a fraud has been not only contemplated but was actually and successfully perpetrated, one who participated in the benefits must generally remain content with his lot." *Goldstein v. Enoch*, 248 Cal. App. 2d 891, 896-897 (1967) (citation omitted).

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

consummate the transaction. TAC ¶¶ 131-32. The Employment Agreements that those Plaintiffs then signed not only failed to reflect the allegedly promised future roles, but also affirmatively stated that Plaintiffs' employment would be "At Will" and that either party could terminate the Plaintiffs' employment with Netcentives at any time, with or without cause. Shell's RJN Exhibit E at ¶¶ 1, 3, 5. Under these circumstances, it would have been manifestly unreasonable for Plaintiffs' to rely upon any purported oral statements as to their projected future roles at Netcentives, and their fraud-based claims against Shell must fail as a result.

**2. Plaintiffs' Remaining Allegations of Misrepresentations Lack the Particularity Required by Rule 9(b)**

Plaintiffs also claim that the CSFB Defendants and Netcentives officers made oral misrepresentations allegedly related to the value of Netcentives stock during the negotiations leading to the UVN acquisition. As against Shell (leaving aside the specific allegations discussed in the preceding section), these claims rest entirely on general and conclusory allegations that the "Individual Defendants:" (1) made material misrepresentations to Plaintiffs regarding the market price of Netcentives stock (TAC ¶ 1); and (2) repeated materially misleading statements contained in the Prospectus during the acquisition negotiations (TAC ¶ 45). Nowhere do Plaintiffs allege any particular, actionable misrepresentations by Shell. Their conclusory and general allegations tell Shell (and the Court) nothing of substance, and fall far short of the particularity requirements of Rule 9(b).

**(a) Plaintiffs Fail To Identify Any Concrete, Particularized Misrepresentations Of Fact**

The tens of thousands of words in the verbose TAC do not compensate for Plaintiffs' failure to properly allege their purported fraud-based claims against Shell. As to most of the allegations in the Third Amended Complaint, Plaintiffs fail to plead the time, place and content of each alleged misrepresentation, as required – particularly with respect to the alleged misrepresentations regarding the market price for Netcentives common stock and repeated statements regarding the Prospectus. In short, with the exception of the specific statements discussed in Part C.1, above, Plaintiffs fail to plead their broad and general allegations in support

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

of their claims with the specificity and detail that the law demands.

Plaintiffs' allegation that they were misled as to the market price for Netcentives' shares is utterly without support. In fact, Plaintiffs allege that they knew the market price and that they based the exchange ratio in the Merger on that price (the final deal was reached at a number, $52, below the then-current market price for Netcentives shares). TAC ¶¶ 96-98, 109. Plaintiffs allege that this was not the "real" market price for Netcentives shares, but Plaintiffs fail to state what the "real" price was or how they could arrive at such alleged "real" price. Plaintiffs cannot claim that Shell's repetition of the actual market price during negotiations was a misrepresentation. As explained further below, Plaintiffs cannot base a claim against Shell on their dissatisfaction with the market's pricing of Netcentives' shares. To the extent that Plaintiffs claim the Underwriter Defendants manipulated Netcentives stock's market price, Plaintiffs utterly fail to allege any facts of misrepresentations supporting this argument as to Shell, much less allege facts as to Shell's role in such a scheme. Rather, Plaintiffs merely allege general statements as to CSFB's practice regarding other companies.

Plaintiffs' claims regarding the alleged "repetition" of unidentified "materially misleading" statements contained in the Netcentives Prospectus are similarly deficient. Plaintiffs wrongly assert that: (1) the Prospectus contained material misstatements and omissions regarding excessive commissions, (2) the Underwriter Defendants manipulated and artificially inflated the Netcentives aftermarket by entering into "tie-in" and "laddering" arrangements with unspecified customers arrangements with unspecified customers; and (3) the Individual Defendants repeated or acquiesced in the alleged materially misleading statements contained in the Prospectus during the Merger negotiations. TAC ¶¶ 20, 76. These conclusory allegations do not contain the requisite particularized facts to support fraud-based claims.

For example, with respect to the alleged excessive commissions, Plaintiffs do not identify any customers the Netcentives Underwriters allegedly solicited to pay excessive commissions or fees in exchange for their allocations in the Netcentives IPO. Nor do Plaintiffs allege the amount

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

of the alleged commissions, how many shares were allocated to the customers, or when, where, and by whom the alleged solicitations took place.[7] No allegations disclose whether or how Shell is supposed to have been aware of any alleged excessive commissions charged by CSFB.

As for the so-called "tie-in" arrangements, Plaintiffs fail to identify any customers of the Underwriters who allegedly entered into these vague arrangements. Moreover, Plaintiffs fail to specify how many of those customers purchased shares, how many shares were purchased, at what price the shares were purchased, or how the purchases affected the price or trading volume of the stock. Nor do Plaintiffs allege which Defendants "repeated" the unidentified misrepresentations in the Prospectus, or which alleged misrepresentations were repeated, or where, when, or to whom they allegedly were repeated. To top it off, nothing in the TAC ties these matters to Shell. For these reasons, the alleged misrepresentations do not support Plaintiffs' fraud-based claims as to Shell. Plaintiffs have made three, equally vague attempts at pleading these claims against Shell, and do not deserve another chance. The claims should be dismissed without leave to amend.

**(b) Plaintiffs Allege No Facts Demonstrating Falsity**

Perhaps most importantly, Plaintiffs offer no explanation as to *why* and *how* the remaining alleged misstatements were false or misleading when made. For example, Plaintiffs fail to plead any facts suggesting that any statements concerning Netcentives stock price were false at the time that they were allegedly made. Instead, Plaintiffs merely suggest that the statements must have been false because the stock price later declined. TAC ¶ 149. This inference does not support a fraud-based claim against Shell. Plaintiffs' apparent argument that "simply because the alleged misrepresentation conflicts with the current state of facts, the [alleged misrepresentation] must have been false" is insufficient as a matter of law. *In re GlenFed*, 42 F.3d 1541, 1548 & n.8 (9th Cir. 1994). Such attempts to plead "fraud by hindsight" are flatly prohibited by Rule 9(b).

[7] The TAC contains references to alleged excessive commissions relating to *other* IPOs. TAC ¶¶ 184-219. This does not remedy the pleading deficiency because these alleged examples are unrelated to the Netcentives IPO and have no apparent connection to Defendant Shell.

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

*Ronconi v. Larkin*, 253 F.3d 423, 430 (9th Cir. 2001) ("[N]o facts are alleged in the complaint that would support an inference that the [defendant's] . . . predictions were known to be false or misleading at the time by the people who made them."). Plaintiffs' generic misrepresentation claims against Shell should therefore be dismissed for this additional reason.

### D. Plaintiffs' Claims Under The California Corporations Code (Counts XI and XIII) Also Fail

#### 1. Plaintiffs' California Corporations Code Claims Are Time-Barred

Corporations Code section 25506 provides that all actions to enforce any liability under the sections of the Corporations Code at issue in the TAC must be brought within one year of the time plaintiffs had notice of the violations. Cal. Corp. Code § 25506. This Court observed in its March 21, 2005 Order that "the Ninth Circuit has held that inquiry notice suffices to start the running of the statute of limitations under this code section" and cited *Kramas v. Sec. Gas & Oil, Inc.*, 672 F.2d 766, 770 (9th Cir. 1982). This Court distinguished *Kramas* as applied to CSFB on the ground that this case "involves a fiduciary relationship, or at the least the potential for such a relationship under the factual allegations construed in a light most favorable to Plaintiffs." Order at p. 15. However, Defendant Shell – as a principal participant in a merger negotiation across the table from Plaintiffs – owed them no such duty (as discussed in Part A above). Therefore, inquiry notice suffices in this instance to trigger the commencement of the statute of limitations, and Plaintiffs' Corporation Code claims filed on March 3, 2002 are time-barred.

Plaintiffs acknowledged that the Netcentives stock price dropped "precipitously" after the transaction closed on March 3, 2000 (when the price was $48.12). TAC ¶ 149. By December 2000, it was less than $5 per share – or approximately 10% of its March 2000 value. Shell's RJN Exhibit A**.** Given these allegations, such a price drop is sufficient "inquiry notice" to trigger the commencement of the statute of limitations. *See In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 389 (S.D.N.Y. 2003) ("the dramatic decline in the price of Plaintiffs' shares in early 2000 also served to put them on notice of the alleged fraud"); *see also Tregenza v. Great American Communications Co.*, 12 F.3d 717, 720 (7th Cir. 1993) (ninety percent drop in stock price in one year put plaintiffs on inquiry notice; reasonable investor "would have become suspicious and

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

investigated"); *In re Infonet Services Corp. Sec. Litig.,* 310 F. Supp. 2d 1106, 1114-1115 (C.D. Cal. 2003) ("[i]nquiry notice may be triggered by 'any financial, legal, or other data, such as public disclosures in the media.'") Moreover, to the extent Plaintiffs' claims are based on representations concerning "completed transactions" and Plaintiffs' future roles at Netcentives, the fact that the supposed transactions never occurred must have been immediately obvious to Plaintiffs following the merger, and they acknowledge that Netcentives did not, in fact, treat them as key managerial employees after the transaction. TAC ¶¶ 135-47. If ever there was a plaintiff on notice of purported claims, these Plaintiffs fit the bill. Accordingly, Plaintiffs are time-barred from pursuing these claims as to Shell.

**2. Plaintiffs Fail to Allege, and Cannot Allege, Facts Supporting Shell's Purported Violation of Corporations Code Sections 25400, 25500 and 25403**

Count XI of the TAC alleges that Shell violated Sections 25400(d) and 25500 of the California Corporations Code. This cause of action fails on several levels. As an initial matter, Section 25400 standing alone does not create a private civil remedy for its violation. *See California Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102, 109 (2001) ("Enforcement of section 25400 is limited to administrative proceedings initiated by the Department of Corporations."). While Section 25500 does create a civil remedy against those who participate in the market manipulation prohibited by Section 25400, Plaintiffs' claim under section 25500 fails as to Shell on two separate grounds.

First, to violate Section 25400(d), a person must sell or offer to sell stock. Cal. Corp. Code § 25400(d). (The other parts of Section 25400 patently do not apply here.) Expanding on this requirement, California case law requires that a defendant "directly participate" in selling or offering to sell securities. *See Kamen v. Lindly*, 94 Cal. App. 4th 197, 204-06 (2001) (holding sections 25400 and 25500 apply only to defendants engaged in market activity at time of misrepresentations, i.e. issuers, broker-dealers, or others similarly situated who directly sell securities). Although this Court observed in its March 21, 2005 Order that Plaintiffs "allege[d] that the CSFB Defendants sold Netcentives shares," Plaintiffs do not – and cannot – allege that Shell was an issuer, broker-dealer, or other person "directly participating" in a sale of securities,

and as such Plaintiffs fail to state a claim against Shell under sections 25400 and 25500.

Second, section 25500 requires that a person "*willfully participate*" in a violation of section 25400 as a prerequisite for liability against such person. Cal. Corp. Code § 25500 (emphasis added). As set forth above, Plaintiffs fail to allege any facts showing the requisite wrongful conduct or scienter by Shell, with regard to market manipulation or otherwise. *See California Amplifier*, 94 Cal. App. 4th at 112 ("[w]e conclude that the purpose and intent of the willful participation requirement is to clarify and underscore the high level of scienter required for a violation of section 25500. . . . [It is limited to] situations where there is an intent to defraud through a knowingly false statement. Only persons who willfully, not merely recklessly, violate section 25400, subdivision (d) can be liable for damages.")

Plaintiffs also improperly seek to assert a claim against Shell under Corporations Code Section 25403, in Count XIII of the TAC. Section 25403, however, does not create a private right of action. Specifically, section 25403 prohibits knowingly controlling or inducing another to violate section 25401 or providing substantial assistance to someone violating section 25401. Cal. Corp. Code § 25403. That section, however, does not confer a civil remedy upon private litigants. *See California Amplifier*, 94 Cal. App. 4th at 109 (noting that another section, 25400, in the same part 5 can only be enforced by the state). Civil remedies under the Corporate Securities Laws of 1968 are found exclusively in Part 6, California Corporations Code sections 25500-25510. No statute creates a civil remedy for violation of section 25403.[8] Thus, Plaintiffs' claim in Count XIII under Corporation Code section 25403 fails.

**E. Plaintiffs' Unfair Business Practices Claims, And Claims for Conspiracy And Acting In Concert Must Be Dismissed**

Defendant Shell expressly joins in the arguments raised by Defendant Longinotti in his brief in support of his Motion to Dismiss at Sections IV.D and IV.E.

---

8 Moreover, and beyond Plaintiffs' failure to plead a section under which they would have a civil action for liability, Plaintiffs have failed even to plead facts establishing a violation. They have not provided any factual allegations showing Shell's substantial assistance in the unidentified violation of the "California Corporate Securities Law of 1968," or Shell's control over someone else's violation.

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

Briefly, Plaintiffs' allegation that Shell engaged in unfair and unlawful business practices by exchanging allegedly overvalued Netcentives' shares for plaintiffs' UVN shares fails as a matter of law. TAC ¶¶ 390-91. First, this claim must be dismissed because section 17200 does not apply to securities transactions. *See Bowen v. Ziasun Technologies, Inc.*, 116 Cal. App. 4th 777, 788 (2004). Second, even if Plaintiffs could maintain an unfair competition claim based on these securities transactions, they have not alleged any facts supporting a claim that Shell participated in the CSFB Defendants' alleged schemes to manipulate Netcentives' stock price. Finally, Plaintiffs' unfair competition claim as to Shell must fail because it improperly seeks damages from Shell, which are absolutely not recoverable under California Business and Professions Code section 17200. *See, e.g., Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150-51 (2003). Although Plaintiffs make a lame attempt to cast their damages claim as one for restitution or disgorgement (TAC ¶ 392), Plaintiffs cannot maintain such a claim for restitution against Shell, because Plaintiffs do not (and cannot) allege that Shell received anything of value from Plaintiffs or otherwise as a result of the acts at issue. *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 177 (2000) (holding that restitution is the return of money acquired from an individual to that individual). Indeed, there is no allegation suggesting that Defendant Shell profited in any way from any purported misconduct, whether by selling his own Netcentives stock at purportedly inflated prices (he did not sell any stock at all), or otherwise. The unfair competition claim must fail as a result.

Finally, Plaintiffs' blanket "conspiracy" claim must fail as a matter of law because conspiracy is not in itself a cause of action, and Plaintiffs have not alleged a viable underlying claim in their TAC. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994); *Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 82 (2001) (holding civil conspiracy requires commission of an underlying tort). Also, Plaintiffs fail to plead conspiracy with the requisite specificity. *Alfus v. Pyramid Tech. Corp.*, 764 F.Supp. 598, 606-607 (N.D. Cal. 1991). Similarly, Plaintiffs' claim for "Acting in Concert," is, to the extent it is recognized at all under California law, simply an antiquated means of phrasing conspiracy; the claim fails for the same reason as the

conspiracy claim: for want of a viable underlying claim against Shell. *See Frost v. Hanscome*, 198 Cal. 550, 551, 557 (1926) (noting plaintiff claimed defendants were acting in concert to defraud him and defining conspiracy).

Accordingly, the Court should dismiss the claim for alleged violation of the Unfair Business Practices Act, as well as Plaintiffs' purported conspiracy and "acting in concert" claims against Shell, without leave to amend.

## VI. CONCLUSION

For the foregoing reasons, Shell respectfully requests that this Court dismiss Plaintiffs' Third Amended Complaint as to him for failure to state a claim, without leave to amend.

Dated: April 11, 2005

STEEFEL, LEVITT & WEISS
A Professional Corporation

By: /s/
Stephen S. Mayne
Joseph E. Floren
David T. Vanalek
Attorneys for Defendant WEST SHELL III

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019